## DOBSON *v.* LEES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 43. Argued October 31, 1890. — Decided December 1, 1890.

A reissue of letters patent is an amendment, and cannot be allowed to enlarge the claims of the original by including matter once intentionally omitted.

Such intentional omission may be shown by conduct, and the inventor cannot be permitted to treat deliberate and long continued acts of his attorney as other than his own.

In this case there is no room for the contention that there was any inadvertence, accident or mistake attending the issue of the original patent, and the reissue was correctly held to be invalid.

IN EQUITY for the infringement of letters patent. Decree dismissing the bill. Plaintiffs appealed. The case is stated in the opinion.

*Mr. Francis T. Chambers* for appellants.

*Mr. Hector T. Fenton* for appellees.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This was a bill exhibited by John Dobson, James Dobson and James Greaves against James Lees and others, for infringement of reissued letters patent No. 10,054, Division A, dated March 7, 1882, in the Circuit Court of the United States for the Eastern District of Pennsylvania, and upon hearing on pleadings and proofs dismissed by the court. The opinion will be found reported in 30 Fed. Rep. 625.

It appears from the record that James Greaves applied September 30, 1872, for a patent for an "improvement in condensing cylinders for carding engines," the proposed claim being: "The application, as described, of cast iron spindles to the condensing cylinders of carding engines." He stated in the specification: "The object of my invention is to furnish the condensing cylinders of carding engines with spindles of a more durable character than those in common use, and this object I attain by making such spindles of cast iron instead of wrought iron or steel. . . . It is not essential that the spindle, when it passes through the wheel, should in all cases be round. It may, for instance, be square, in which case the feather may be dispensed with."

This application was rejected October 29, 1872, and again rejected December 7, 1872. On the 7th of December, 1874, the following was substituted for the claim: "A spindle for carding machine rollers, rectangular in form, for the purpose set forth." This amendment was followed by a redrawn specification, the claim of which was as follows: "The combination, substantially as described, of the condensing cylinder of a carding engine, the driving wheel A, the hub of which has a square or angular aperture, and the spindle X, having a corresponding shape imparted to that portion of it which slides through the said hub, all as set forth." This specifica-

tion was accompanied by a new sheet of drawings marked "sheet 2," the drawings originally filed being marked "sheet 1," and by a new model. A new oath of invention was required and made, dated January 22, 1875. On the 27th of January the claim of the amended specification was rejected upon reference to Davison and Crowther's English patent No. 2885 of 1856, and others; again rejected on the 26th of February in view of that reference, and also of the patents of Harraday, of May 30, 1854, No. 10,986, and of Warth, of August 6, 1872, Nos. 130,343 and 130,344; again, on March 31, 1875; again, on appeal to the board of examiners in chief, August 7, 1875; and again, by the Commissioner on appeal to him, November 11, 1875. There having been a change of attorneys, on the 12th of October, 1876, an amended specification was filed, and rejection again followed, November 27, 1876. The specification was again amended November 29, so as to set up these two claims:

"1st. The combination, in a carding engine, of a condensing or rubber cylinder, a driving wheel, and a polygonally-shaped horizontal shaft or spindle, the latter being adapted to be revolved and at the same time to be continuously reciprocated in a correspondingly polygonally-shaped bearing, and a continuously reciprocating rubber, substantially as and for the purposes described.

"2d. In a carding engine, the combination of a continuously reciprocating rubber, a driving wheel to turn said rubber, and a horizontal shaft or spindle connecting the two together, said shaft or spindle and the bearing in which it reciprocates being both made of cast iron, or both of metal having the same crystalline structure, whereby in the reciprocating action the tendency of the crystalline particles of cast metal in the bearing to wear the spindle will be resisted by the crystalline particles of the latter, substantially as and for the purposes described."

This application was rejected December 1. The applicant appealed, and on December 2 the examiner reported that he had rejected the first claim, which did not then require that the spindle and bearing should be of cast iron, upon the

ground that its non-patentability was *res adjudicata* so far as the examiner was concerned; and that the second claim was rejected because the substitution of the cast metal shaft for the wrought metal or steel shaft, before employed, required no invention. The examiners in chief, on the 15th of December, reversed the examiner's decision as to the second claim, but affirmed it as to the first, holding, however, that if the first claim were amended so as to include "cast iron or metal of the same crystalline structure" for bearing and spindle, they thought it would be admissible. The first claim was accordingly amended by the insertion, after the word "bearing," of the words "said bearing and said shaft or spindle being of cast iron or of metal of the same crystalline structure."

On the 11th of January, 1877, an interference was declared between these claims and the application of one Stone, and on the 8th of February, 1877, the examiner refused a motion to dissolve the interference, upon the ground that the feature which Greaves relied on as not shown in the Stone invention was that Greaves' shaft and bearing were made of cast iron or metal having the same crystalline structure, while Stone's were of cast brass, which would come within the scope of Greaves' claims. It was held by the Assistant Commissioner, on appeal, on the 9th of February, that "as cast brass has not the same crystalline structure as cast iron, the application of Greaves, if so amended in its claims as to restrict him to the use of metal having the same crystalline structure 'as cast iron,' will not interfere with an application showing and describing 'cast brass,' if the material is of the essence of the invention." Applicant accordingly so amended February 9, the interference was dissolved February 10, and the patent was issued February 20, 1877.

The result of all this was, that after repeated attempts and repeated rejections, the patent was allowed, containing two claims, limited strictly to a shaft and bearing of cast iron or of metal of the same crystalline structure as cast iron. These claims were as follows:

"1. The combination, in a carding engine, of a condensing or rubber cylinder, a driving wheel, and a polygonally-shaped

horizontal shaft or spindle, the latter being adapted to be revolved, and at the same time to be continuously reciprocated in a correspondingly polygonally-shaped bearing, said bearing and said shaft or spindle being of cast iron or of metal of the same crystalline structure as cast iron, and a continuously reciprocating rubber, substantially as and for the purposes described.

"2. In a carding engine, the combination of a continuously reciprocating rubber, a driving wheel to turn said rubber, and a horizontal shaft or spindle connecting the two together, said shaft or spindle and the bearing in which it reciprocates being both made of cast iron, or both of metal having the same crystalline structure as cast iron, whereby in the reciprocating action the tendency of the crystalline particles of cast metal in the bearing to wear the spindle will be resisted by the crystalline particles of the latter, substantially as and for the purposes described."

Applications were then filed for a reissue in two divisions, A and B — for division A on March 24, 1877, and for division B on March 15, 1877.

Division B contained both of the claims of the original patent, and reissued letters patent No. 9477 were granted therefor under date of November 23, 1880.

The claim in Division A was as follows:

"In a carding engine, a condensing or rubber cylinder mounted on a polygonally-shaped horizontal shaft, in combination with a driving gear, A, having a sleeve-shaped bearing, $b$, said shaft and cylinder being adapted to be revolved by the drive-wheel A, and at the same time to be rapidly and continuously reciprocated by suitable mechanism, substantially as and for the purposes described."

And for this, reissued letters patent No. 10,054 were granted March 7, 1882, and this is the patent in controversy. Before it was passed for issue, various proceedings were had in the Patent Office, including rejections, appeals, and disposal of an interference between this application and that of Stone, and it appears by the statement of Examiner Appleton, under date of December 5, 1881, that after the determination of the

interference the application was returned to the examiner, "with instructions to consider whether or not, in view of certain recent decisions of the Supreme Court of the United States, the same in its present form can properly be allowed." The examiner was clearly of opinion that under the decisions of this court in *Powder Company* v. *Powder Works*, 98 U. S. 126; *Leggett* v. *Avery*, 101 U. S. 256; *Manufacturing Co.* v. *Ladd*, 102 U. S. 408; and *Goodyear Dental Vulcanite Rubber Co.* v. *Davis*, 102 U. S. 222, the applicant was not entitled to the claim presented, "said applicant having withdrawn a similar claim in his original application in order to obtain his original patent, and the present claim being for a different invention from that covered by the original patent." And in his statement of grounds of decision, under date of January 27, 1882, the examiner gave as his reasons: "In the first place, this claim, being for a combination of parts of peculiar construction, while the original is for a combination of parts when some of the same are constructed of particular metals, the metals being the gist of the claim thereof, is for a different invention from that covered by the original patent. In the second place, the claim now in controversy having been withdrawn from the application upon which the original patent was granted, with a full knowledge of all the facts in the case, it cannot be urged that such withdrawal of the claim, or any other change that the appellant now desires to make, was the result of or necessitated by any inadvertence, accident, or mistake, for which alone corrections by reissue can be made." The letter of allowance bears date February 15, 1882.

The Circuit Court held that the only claim in the reissue was for a combination not claimed in or covered by the original patent, and hence not for the same invention; that the claim in the reissue was before the commissioner and its allowance urged by the patentee through his solicitor, but was not allowed, and was therefore stricken out, and the patent accepted without this claim; that the court could not distinguish betwen the patentee and his counsel as to what occurred during the pendency of the application for the patent, and, as

to its acceptance by the latter, the patentee must be regarded as bound by the acts of his counsel; and that, under the circumstances, the case fell clearly within *Leggett* v. *Avery,* 101 U. S. 256.

In *Leggett* v. *Avery,* thus referred to, Mr. Justice Bradley, speaking for the court, said: "We think it was a manifest error of the commissioner, in the reissue, to allow to the patentee a claim for an invention different from that which was described in the surrendered letters, and which he had thus expressly disclaimed. The pretence that an 'error had arisen by inadvertence, accident, or mistake,' within the meaning of the patent law, was too bald for consideration. The very question of the validity of these claims had just been considered and decided with the acquiescence and the express disclaimer of the patentee. If, in any case, where an applicant for letters patent, in order to obtain the issue thereof, disclaims a particular invention, or acquiesces in the rejection of a claim thereto, a reissue containing such claim is valid, (which we greatly doubt,) it certainly cannot be sustained in this case. The allowance of claims once formally abandoned by the applicant, in order to get his letters patent through, is the occasion of immense frauds against the public. It not unfrequently happens that, after an application has been carefully examined and compared with previous inventions, and after the claims which such an examination renders admissible have been settled with the acquiescence of the applicant, he, or his assignee, when that investigation is forgotten and perhaps new officers have been appointed, comes back to the Patent Office, and, under the pretence of inadvertence and mistake in the first specification, gets inserted into reissued letters all that had been previously rejected. In this manner, without an appeal, he gets the first decision of the office reversed, steals a march on the public, and on those who before opposed his pretensions, (if, indeed, the latter have not been silenced by purchase,) and procures a valuable monopoly to which he has not the slightest title. We have more than once expressed our disapprobation of this practice. As before remarked, we consider it extremely doubtful whether reissued

letters can be sustained in any case where they contain claims that have once been formally disclaimed by the patentee, or rejected with his acquiescence, and he has consented to such rejection in order to obtain his letters patent. Under such circumstances, the rejection of the claim can in no just sense be regarded as a matter of inadvertence or mistake. Even though it were such, the applicant should seem to be estopped from setting it up on an application for a reissue." 101 U. S. 259, 260. See also *Manufacturing Co.* v. *Ladd,* 102 U. S. 408.

A reissue is an amendment, and cannot be allowed unless the imperfections in the original patent arose without fraud, and from inadvertence, accident or mistake. Rev. Stat. § 4916. Hence the reissue cannot be permitted to enlarge the claims of the original patent by including matter once intentionally omitted. Acquiescence in the rejection of a claim; its withdrawal by amendment, either to save the application or to escape an interference; the acceptance of a patent containing limitations imposed by the Patent Office, which narrow the scope of the invention as at first described and claimed; are instances of such omission. *Union Metallic Cartridge Co.* v. *United States Cartridge Co.,* 112 U. S. 624; *Shepard* v. *Carrigan,* 116 U. S. 593; *Roemer* v. *Peddie,* 132 U. S. 313; *Yale Lock Co.* v. *Berkshire Bank,* 135 U. S. 342, 379, and cases cited.

It is clear that the claim of this reissue is not covered by the original patent, and it appears that before the issue of the latter it was passed upon and rejected; was withdrawn and erased; an interference was dissolved upon condition of the amendment; and the issue of the original letters was predicated upon its abandonment. There is no room for the contention that there was any inadvertence, accident or mistake in the premises. Nor, in the light of these protracted proceedings in the Patent Office, can the applicant be permitted to treat the deliberate acts of his attorney as the result of inadvertence, accident or mistake. The repeated official decisions and orders, and the repeated efforts to maintain this claim without success, during this long struggle, indicate anything

but negligence or inadvertence on the part of the solicitors employed.

The decree of the Circuit Court was right, and it is

*Affirmed.*