ELEVATOR SUPPLIES CO., Inc., v. GRAHAM & NORTON CO., et al.

District Court, D. Delaware. June 10, 1929.

No. 636.

See, also, 33 F.(2d) 148, 153.

E. Ennalls Berl (of Ward & Gray), of Wilmington, Del., and Samuel E. Darby, Jr. (of Darby & Darby), of New York City, for plaintiff.

William G. Mahaffy, of Wilmington, Del., and Clifton V. Edwards (of Edwards, Bower & Pool), of New York City, and Henry C. Townsend and Virgil C. Kline (of Townsend & Decker), both of New York City, for defendants.

MORRIS, District Judge. Of the two patents here in suit, the first, reissue No. 13,932, to Wylde and Schenck, has for its stated object a door controlling device that will prevent an unauthorized opening of an elevator shaftway door, even though the door is not completely closed. The object of the second, No. 1,105,053, likewise to Wylde and Schenck, is, without increase of hazard, to shorten the time necessary for the elevator to remain at the several floors, and thereby increase the number of trips the elevator may make during a given time. The object of the first is accomplished by means of mechanism which, after the door has been almost, but not completely, closed, prevents the reopening of the door "from the outside of the shaft sufficiently to allow a person to pass through." The object of the second is carried out by providing in the hoisting motor circuit an electric switch so controlled by the door-operating mechanism that it will prevent the starting of the elevator until the door has been sufficiently closed to be locked by the device of the first patent against reopening from the outside, but will permit the car to be started at the moment the door is so locked against reopening without waiting for it to be completely closed.

Both patents are owned by the plaintiff, Elevator Supplies Company, Inc., which charges the defendant Graham & Norton Company with infringement. The claims in issue of the reissue are:

"3. In a door-controlling device, a door mechanism for opening and closing said door [and comprising a toggle one member of which is attached to the door and the other to a relatively stationary part, and a movable member mounted on the door and adapted to break the toggle and open the door] and means [comprising two parts freely moved past each other but adapted to engage on a reverse movement of the door from any one

of a plurality of points during the latter part of the closing movement of the door] for positively checking an opening movement of the door when the door passes a predetermined point in its closing movement, said mechanism being arranged to permit the free movement of said door in each direction when open beyond said predetermined point."

"4. In combination a door, mechanism for closing the door comprising a toggle, one member of which is attached to the door and the other to a relatively stationary part, and means comprising two parts freely moved past each other but adapted to engage and stop the door on a reverse movement of the door from any one of a plurality of points during the latter part of the closing movement of the door, a manually-operated member movably mounted on the door and arranged to break the toggle, and then by a pressure on said member in the door-opening direction to open the door and toggle."

Claim 4 and those parts of claim 3 inclosed in brackets were inserted by amendment during the pendency of the application for the reissue.

The defenses to the reissue are noninfringement and invalidity. The defense of noninfringement is based upon the contention that the claims are so limited by the specification and the prior art that defendant's mechanism does not come within them, in that defendant does not employ "a movable member mounted on the door," that the "two parts" of defendant's apparatus are different in character, differently mounted, and function differently from those of the claims, and in that, if the claims were broad enough to include defendant's device, they would be for a mere aggregation, and hence invalid.

The reissue is a paper patent. The construction disclosed in the patent has never been used, although the original patent therefor was granted in November, 1912. In that construction, as pointed out in the specification, the "two parts," 11 and 14, perform the dual function of preventing the reopening of the door when partially closed and of holding the toggle immovable in its straightened position after the door is completely closed. The lever, or movable member 9, "mounted on the door" is not a mere handhold for the operation of the toggle. It constitutes a connecting link between the toggle and the "two parts," and is indispensable to their co-operating locking action, regardless of whether the door is partially or completely closed. It is, likewise, an indispensable part of the only key for unlocking the two parts

after the door has been closed far enough to permit their locking engagement. Moreover, by amendment of the claims in issue, deliberately made during the pendency of the application for the reissue, these claims were limited to a mechanism including "a movable member mounted on the door." Defendant's mechanism does not include any element having even remotely similar functions. It consists of a toggle, a handhold mounted thereon for purposes of convenience in operating the toggle, a rack of varying designs affixed to the sill at a desired point, and a pawl mounted on the door to engage the rack to prevent the reopening of the door during a certain stage of its closing movement. This stage ends before the door is completely closed. When the toggle is straight and the door closed, the pawl and rack have no co-operating relation with the toggle. They are then wholly without function or effect.

Defendant's toggle handhold is not "mounted on the door." It is not a connecting link between the toggle and the pawl and rack. It is not indispensable or even related to the locking action of the pawl and rack. It is not a key by which the pawl and rack when in locking engagement may be unlocked. On the contrary, a pressure thereon in the door-opening direction at such times serves but to lock these two parts more firmly.

I find defendant does not employ the "movable member mounted on the door" of plaintiff's claims, and that, consequently, it does not infringe. Finding no infringement, the validity of the reissue need not be considered.

All the claims of the second patent, No. 1,105,053, applied for June 20, 1913, and granted July 28, 1914, are in suit. Claim 1, cited as illustrative, calls for:

"1. An elevator car and mechanism for raising and lowering the same, a controller for said operating mechanism, a door, check mechanism for the door automatically operable at several points during the latter part of the door's closing movement to prevent an opening movement by force applied directly to the door, and mechanism automatically throwing said controller to car-startable position in advance of the closed position of the door, said controller and check mechanism being so arranged that the latter will at least operate at a plurality of points after said controller is thrown."

Though noninfringement is also pleaded, defendant relies more strongly upon invalidity by reason of abandonment, both actual and implied, double patenting and the prior

148

art. Implied abandonment is predicated upon the disclosure, through identical drawings and language in surrendered patent, No. 1,044,115, to Wylde and Schenck, for which reissue, No. 13,932, was granted, of the subject-matter of the patent in suit, and the issuance of that patent on November 12, 1912, without its having therein a claim, or a reservation in the application of a right to make claim, for such subject-matter. The defense of actual abandonment rests upon the cancellation by Wylde and Schenck, after rejection by the patent office, on June 15, 1912, of claim 5 of the application for the surrendered patent and their failure to make any other claim during the pendency of that application to the subject-matter of the canceled claim, which read thus:

"5. In a door-controlling mechanism, a movable door, a locking device preventing the opening movement of said door when the same has been partially closed and comprising two parts freely movable past each other during the closing movement but adapted to engage on a reverse movement of the closing door, a car passing said door, and means for preventing the starting of said car if said door is open beyond a predetermined point."

Plaintiff denies neither that the invention of the claims in suit was disclosed in the surrendered patent nor that it was covered by the rejected and canceled claim. It seeks to support the patent upon the ground that the application therefor was made within two years after the rejection, and "while the original application was still pending in reissuable form." The reissue was applied for April 21, 1913, and granted June 15, 1915.

While it is true that to the general rule laid down in McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800, Adams Electric R. Co. v. Lindell R. Co., 77 F. 432, 451 (C. C. A. 8), and many other cases, that the grant of a patent presumptively dedicates and abandons to the public everything described but not claimed therein, there is an exception saving a later patent claiming the disclosed but unclaimed matter of the first, if the two applications were copending, Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 22 F.(2d) 259 (C. C. A. 2); Gladding-McBean Corp. v. N. Clark & Sons, 16 F.(2d) 50 (C. C. A. 9), yet that exception, so far as I am aware, has not hitherto been deemed sufficiently elastic to include a patent granted upon an application filed during the pendency of the application for the reissue, but for matter disclosed in the original. The patent in suit does not even purport to be a division of the reissue. There is nothing to indicate that its term is less than seventeen years from the date of its grant. There has been no showing, either here or in the Patent Office, that the omission from the original of claims for its unclaimed matter was attributable to inadvertence, accident, or mistake. On the contrary, the unqualified acquiescence of the patentees in the rejection of the sole claim of the original application that was directed to the subject-matter of the patent in suit evinces an intentional omission. Dobson v. Lees, 137 U. S. 258, 265, 11 S. Ct. 71, 34 L. Ed. 652.

Such acquiescence and intentional omission not having been canceled by the substitution of other claims for the rejected matter in the original application or by the filing of a new or divisional application therefor prior to the granting of the original patent, the abandonment became complete. After the original patent issued, the abandoned matter could not be recaptured by the patentee, even by means of a reissue. Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 14 S. Ct. 28, 37 L. Ed. 989; Dobson v. Lees, 137 U. S. 258, 11 S. Ct. 71, 34 L. Ed. 652; Yale Lock Mfg. Co. v. Berkshire Nat. Bank, 135 U. S. 342, 10 S. Ct. 884, 34 L. Ed. 168.

The bill of complaint must be dismissed.