23 C.C.P.A. (Patents)

## In re WHITTELSEY.

Patent Appeal No. 3661.

Court of Customs and Patent Appeals.

June 8, 1936.

George J. Harding, of Philadelphia, Pa., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner rejecting claims 31, 32, and 38 to 41, inclusive, of appellant's application for a reissue of patent No. 1,793,983, issued to him February 24, 1931. Certain claims were allowed. The ground of rejection of the claims above specified was a lack of showing by appellant of inadvertence, accident, or mistake to sustain a reissue as to such claims, which showing is required by R.S. § 4916, as amended in 1928, 35 U.S.C. § 64 (35 U.S.C.A. § 64).

Claims 31 and 38 are illustrative of the claims here involved and read as follows:

"31. The method of diluting a solution of nitrocellulose in an organic solvent without destroying its viscosity which comprises gradually mixing into the solution an amount of water less than half that of the original solution whereby the water is emulsified in the organic solvent."

"38. A diluted nitrocellulose solution comprising a viscous solution of nitrocellulose in a substantially water-immiscible organic solvent and water in amount less than half of the amount of the nitrocellulose solution, the water being dispersed in internal phase in the organic solvent, the viscosity of the original nitrocellulose solution being unchanged."

The reissue application, which comprises identically the same disclosure as does the original patent, relates to aqueous emulsions of rubber and of nitrocellulose, designated as organophil colloids, and procedure for their production.

The Board of Appeals found that the original patent included a generic claim, No. 5, and claims specific to the rubber emulsion. It contained no claims specific to the nitrocellulose emulsion. The generic claim and claims to specific rubber emulsions have been allowed in the reissue application, and all of the rejected claims relate to the nitrocellulose species within the generic claim.

The application for the original patent was filed on November 6, 1922. At that time rule 41 of the United States Patent Office read as follows: "41. Two or more independent inventions cannot be claimed in one application; but where several distinct inventions are dependent upon each other and mutually contribute to produce a single result they may be claimed in one application."

This rule was construed by the Patent Office tribunals to permit but one species of an invention to be claimed in an application, the applicant being entitled to make a generic claim and specifically to claim one form or species of his invention.

On June 1, 1930, said rule was amended to read as follows: "41. Two or more independent inventions can not be claimed in one application; but where several distinct inventions are dependent upon each other and mutually contribute to produce a single result they may be claimed in one application: Provided, That more than one species of an invention, not to exceed three, may be claimed in one application if that application also includes an allowable claim generic to all the claimed species. In the first action on an application containing a generic claim or claims and claims to more than one species thereunder the examiner, if he is of the opinion after a complete search that no generic claim presented is allowable, shall require the applicant in his response to that action to elect that species of his invention to which his claims shall be restricted if no generic claim is finally held allowable."

It appears from the record that this amendment of rule 41 was made about four months before appellant's original application was allowed and sent to issue, and more than eight months before appellant's original patent was issued. There was, therefore, a period of more than eight months during which appellant might, by proper amendment of his application, have secured the allowance of the claims here involved in his original patent.

An affidavit by appellant appears in the record, from which we quote:

"3. That on the filing of his application which eventuated in said United States Letters Patent No. 1,793,983, he instructed his then attorney fully with reference to his concept and advised his then attorney that he believed himself entitled to claims to cover his concept broadly and also to claims to cover specifically emulsions of solutions of rubber and emulsions of solutions of nitrocellulose, in which he was primarily interested.

"4. That his then attorney advised him that the rules of the Patent Office in force at that time permitted only the presentation of broad claims and of claims to one species, as a result of which advice he instructed his then attorney to present broad claims and claims more particularly directed to emulsions of solutions of rubber.

"5. That during the prosecution of the application which eventuated in his said patent No. 1,793,983, over a period of eight years, he always insisted upon the prosecution of claims of sufficient breadth to cover emulsions of solutions of nitrocellulose as well as emulsions of solutions of rubber, and that variously during the prosecution, being dissatisfied with the handling of the application, he transferred the prosecution of the application from one attorney to another.

"6. That throughout the prosecution of his said application, he actively cooperated with his various attorneys and always insisted upon the prosecution of broad claims and believed that broad claims were being prosecuted.

"7. That in the final stage of the prosecution of his said application, still actively cooperating with his then attorneys, he visited the United States Patent Office with his attorney and discussed his said application with the Examiner having it in charge, still insisting and believing that the claims of his application were of a breadth sufficient to cover his concept broadly, and, in particular, of a breadth sufficient to cover emulsions of solutions of rubber and emulsions of solutions of nitrocellulose.

"8. That as a result of the interview had with the Examiner, and which was attended by him, and of amendment to his said application filed by his attorney, he was advised that among the other claims appearing in his said patent No. 1,793,983, largely directed to emulsions of solutions of rubber, the Patent Office had allowed to him a claim constituting claim 5 of his said patent as issued.

"9. That he examined the claim appearing as claim 5 in his said patent and discussed the claim with his then attorney and recalls distinctly that the claim appeared to him to cover and embrace, and he believed that it covered and embraced, solutions of organophil colloids including specifically solutions of rubber and solutions of nitrocellulose broadly. That being satisfied that he had broad protection under the claim appearing as claim 5 of his said patent and that he had specific protection for emulsions of solutions of rubber under other allowed claims, and having no advice or knowledge of the change in the rules of the Patent Office whereby claims for three species as compared with claims for only one species were permitted, he instructed the issue of his said patent."

The affidavit is quite lengthy, but we regard the portion above quoted as the most pertinent with respect to the question here involved.

We think that the record clearly establishes that claims similar to those here involved were deliberately omitted from appellant's original application, and that there was no inadvertence or mistake in their not being included therein. It appears that, at the time the original application was filed, under said rule 41 then in force appellant could not, in addition to his generic claim, have been allowed species claims for both rubber and nitrocellulose emulsions, but could have had either of said species. Appellant deliberately elected to make claims to the rubber emulsion species, and when the application was filed, including the said rubber emulsion species, appellant had no intention of including the nitrocellulose species; he being advised by his attorney that he could not in that application include claims to both species in addition to his generic claim. So far as the record discloses, at no time subsequent to the filing of his original application and prior to the issue of patent thereon did appellant form any intention to include the nitrocellulose species in his original application. The most that can be said is that, had appellant become aware prior to the issue of his patent that said rule 41 had been amended on June 1, 1930, permitting the inclusion of the nitrocellulose emulsion claims in addition to the rubber emulsion claims in his application, he then would have formed the intention so to include them. According to appellant's affidavit, after the filing of his original application he first formed the intention of securing the allowance of the claims here involved after his original patent was issued.

It is plain that the claims here involved were intentionally omitted from his original application under the belief that they could not properly be included therein, although in fact they might have been included during a period of eight months immediately preceding the issue of the patent.

In the case of Dobson v. Lees, 137 U. S. 258, 11 S.Ct. 71, 73, 34 L.Ed. 652, the court said: "A reissue is an amendment, and cannot be allowed unless the imperfections in the original patent arose without fraud, and from inadvertence, accident, or mistake (Rev.St. § 4916 [35 U.S.C.A. § 64]; hence the reissue cannot be permitted to enlarge the claims of the original patent by including matter once *intentionally omitted*." (Italics ours.)

The case of Morgan v. Drake et al., 36 F.(2d) 511, 513, 17 C.C.P.A.(Patents) 729, was an interference proceeding, and there was involved the right of one of the parties to make claims corresponding to the counts in a reissue application. We there said: "The subject-matter of the

interference count must clearly have been disclosed in the patent upon which the reissue application is based, and *it must clearly appear that the reissue applicant sought to secure protection of this particular subject-matter in his original application, just as he seeks it in the reissue application,* and that his original patent failed to give this full protection for some one or more of the specific reasons which the statute mentions, such as inadvertence, accident, mistake, or other ground, recited in Rev.St. § 4916, as amended by Act May 24, 1928 (35 U.S.C.A. § 64)." (Italics supplied.)

We also quote from Walker on Patents (6th Ed.) § 274, where, in discussing the circumstances under which a reissue application is proper, the author states: " * * * Nor is the statute satisfied in any case where the new claims of the reissue were intentionally omitted from the original patent * * *."

■ The fact that appellant was not aware of the change in rule 41 prior to the issue of his patent does not, in our opinion, affect the question before us. It is a familiar rule that ignorance of the law is not an excuse for a course of action. Rule 41, in force for eight months prior to the issue of appellant's patent, had the force of law, and the fact that appellant, had he actually known of the change in the rule, would then have formed the intention to include the claims here involved in his original application, cannot supply the want of intention in fact.

In the case of In re Murray, 77 F.(2d) 651, 654, 22 C.C.P.A.(Patents) 1196, we said: "We are unable to discern wherein there is any showing made in this record that the disclosure and claiming of the subject-matter now attempted to be incorporated in the reissue was omitted from the original application by inadvertence, accident, or mistake. It may be true that the full force, significance, and scope of the patent may not have been apparent to the patentee or his representatives or solici-

tors until a recent date, but it can hardly be said that the reissue statute was intended to permit the reissuance of a patent to include matters evidently not intended to be incorporated in the original application, which, perhaps, have been suggested by improvements in the art which have occurred since the date of issuance of the original patent. *In other words, the reissue statute, in our opinion, was not enacted for the purpose of correcting errors of judgment* or supplying inventive concepts which have originated since the original patent was issued and applied for." (Italics supplied.)

The brief of the Solicitor for the Patent Office concisely states our view with respect to inadvertence, accident, or mistake, in the matter before us, as follows: " * * * If appellant deliberately put in the original application claims specific to one species and deliberately, on study of the existing practice, left out claims for another species, there was surely no intention to claim both, and no inadvertence, etc., in leaving one out."

We think the record discloses that appellant did deliberately put in his original application claims specific to one species, and deliberately, on study of the existing practice, left out claims for the species here involved, and hence there was neither inadvertence nor mistake upon which a reissue could properly be had so far as the claims here involved are concerned.

■ The rejection of appellant's claims would seem to work a hardship upon him in that, if allowed, he might have secured more adequate protection for his invention without prolonging his monopoly, but the reissue statute must be given a uniform construction, and applicants must come within its provisions before relief may be granted them through a reissue application.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.