RICHMOND ENGINEERING COMPA-
NY, Incorporated, Appellant,

v.

BOWSER, INC., Appellee.

No. 7761.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 14, 1959.

Decided March 11, 1959.

John V. Groner, New York City (Lewis F. Powell, Jr., Ralph H. Ferrell, Jr., Richmond, Va., Munson H. Lane, Washington, D. C., and Stuart A. White, New York City, on the brief), for appellant.

Clarence E. Threedy, Chicago, Ill. (Bernard Hoban, Chicago, Ill., and Christian, Barton, Parker & Boyd, Richmond, Va., on the brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

This is a suit for patent infringement brought by Bowser, Inc., assignee of Patent 2,725,896, issued to H. E. Marvel, on December 6, 1955, for a water-fuel separator upon an application filed August 25, 1950. The complaint is

directed specifically to Reissue Patent 24,136, which was granted to Marvel on April 3, 1956, on an application filed on January 19, 1956, one and a half months after the original grant. The suit is directed to Claims 1, 2, 3 and 5 of the reissue patent.

Also involved in the suit is alleged infringement of Patent 2,800,232, issued July 23, 1957, to Marvel, assignor to Bowser, Inc., for an improvement of an element of Patent 2,725,896. This patent was brought before the court by a counter-claim of the Richmond Engineering Company, Inc., the defendant in the suit, asking a declaratory judgment of invalidity and non-infringement. In reply to the counter-claim, the plaintiff charged infringement of claim 3 of this patent. Both patents were held valid and infringed by the District Judge and the defendant appealed.

The invention relates to a separator for removing water from fuels for internal combustion engines. This problem has particular significance for aviation gasolines, since water which has become entrained in the fuel crystallizes out and plugs parts of the fuel system when the plane gains altitude and the temperature is lowered, whereby failure of the power and a crash of the plane might result.

The apparatus depicted in the drawings of the original and reissue patents is identical. It consists of a tank having inlet and outlet conduits, a water drain at the bottom of the tank and one or more filter cartridges. The tank has a removable dome-shaped top, which has a closed base or deck plate so as to create an entrance chamber, to which is connected the inlet conduit through which fuel containing water is forced under pressure.

The filter cartridges consist of cylindrical tubes around which layers of resin-bonded fibre glass are packed and compressed by an outer concentric enclosing screen. The ends of the cartridges are screwed into holes in the underside of the deck plate and project downwardly therefrom to the bottom of the tank. The tubes and enclosing screens are held in position by upper and bottom plates or heads. The upper head is provided with an inlet neck through which the fuel is forced from the top chamber into the inner core of the cartridge. The entire cartridge is enveloped by a cloth tube or shroud, preferably of linen, which has a cone-shaped extension at the bottom.

In the operation of the device the fuel is forced, in finely divided form, through the inlet conduit into the top chamber and thence into the cores of the filter cartridges. At it moves through them the fibre glass causes the minute droplets of water in the fuel to coalesce into larger droplets. The mixture moves outwardly into contact with the cloth tube, with the result that the fuel filters through and the water cannot pass but runs down the inside of the tube by gravity to the bottom of the tank whence it is carried away by a drain without further contact with the fuel. The fuel passes out of the tank through an outlet placed in the upper part of the tank immediately beneath the deck plate.

■ The District Judge found after a study of the prior art that the device depicted in the reissue patent and covered by its claims achieved a new and useful result which those skilled in the art, including experts in the employ of the defendant, had repeatedly sought but had failed to obtain. The defendant makes no attempt on this appeal to controvert this finding but confines itself to the defense that the reissue patent had no statutory justification, since it was not shown, as required by the reissue statute, 35 U.S.C. § 251, that through error, without any receptive intent, the original patent was wholly or partly inoperative or invalid. The record shows that, in order to meet objections of the examiner in the Patent Office and to secure the issuance of the original patent, certain amendments were made to its claims, which the defendant contends limited their scope. Bearing these amendments in mind, the defendant attacks the claims of the reissue on the hypothesis that they repudiated the limitations on which the original patent was granted so as to

restore the claims of the patent to their original form. This action, it is contended, runs counter to the long established rule laid down in Dobson v. Lees, 137 U.S. 258, 11 S.Ct. 71, 34 L.Ed. 652, that a reissue cannot be permitted to enlarge the claims of the original patent by including matter once intentionally rejected.

■ This contention in theory is sound enough but in this instance it lacks a factual basis. There was no enlargement of the scope of the claims of the reissue over the claims of the original patent. A comparison of claim 1 in the original patent with claim 1 of the reissue patent, set out below, substantiates this statement.

---◆---

Patent 2,725,986

*Claim 1*

A water-fuel separator comprising a tank having inlet and outlet conduits, a fuel outlet connected to the upper portion of said tank and a water outlet connected to the bottom portion of said tank, a deck plate disposed substantially horizontally in said tank to prevent communication between said conduits, means defining a port in the plate, a water and fuel separating cartridge connected to the plate and having an inlet communicating with said port, said cartridge comprising resin-bonded fibrous filter material disposed in the path of the mixture of water and fuel flowing from said inlet for coalescing the particles of water in the fuel into drops as the same pass therethrough and straining means disposed externally of said cartridge to receive the mixture of fuel and water drops issuing from said separating cartridge for retaining the water drops but passing the fuel.

Reissue Patent 24,136

*Claim 1*

A water-fuel separator comprising a tank having a fuel inlet and a fuel outlet, said fuel outlet being disposed in the upper portion of said tank and a water drain disposed in the lower portion of said tank, a deck plate disposed substantially horizontally in said tank to prevent communication between said fuel inlet and fuel outlet, a water and fuel separating cartridge connected to the plate, said plate having a port therein whereby a mixture of water and fuel may flow into the cartridge from said fuel inlet, said cartridge comprising resin-bonded fibrous filter material for coalescing particles of water in the fuel into drops when a mixture of water and fuel passes therethrough, and straining means disposed externally of said cartridge to receive the mixture issuing from said separating cartridge for retaining the water drops so that they may flow downwardly toward the lower portion of the tank while allowing the fuel to flow through the straining means to the fuel outlet.

---◆---

It is clear from this comparison that the District Judge was correct in his conclusion that the elements set forth in the claims of the original patent and those of the reissue patent are arranged in substantially the same relation with respect to each other and function in substantially the same manner to accomplish substantially the same results.

■ The reissue was sought and obtained because certain amendments of the original claims, in the judgment of the Patent Office, introduced ambiguities which justified the reissue. In the original claim, for example, the tank was described as having inlet and outlet conduits. By subsequent amendment there was added to the claim at this point

the words "a fuel outlet connected to the upper portion of said tank and a water outlet connected to the bottom portion of the tank"; and it was feared that the fuel outlet might mistakenly be taken as another outlet compared to the outlet conduit. The ambiguity was eliminated in the reissue claim 1, set out above, by referring to the words "inlet" and "outlet" as "fuel inlet" and "fuel outlet", respectively. The relationship of the fuel outlet and water outlet to the tank remained unchanged and the scope of the claims of the reissue was not broadened over the claims of the original patent. In fact they were substantially identical, as the judge found. Under these circumstances it is obvious that there is no reason for the application of the rule that an inventor who has accepted a limitation of his patent imposed by the Patent Office is estopped from subsequently denying it; and it is also clear that there was sufficient evidence of ambiguity in the original claims to justify the grant of the reissue. See Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658; General Radio Co. v. Allen B. Dumont Laboratories, Inc., 3 Cir., 129 F.2d 608, 612; Firestone Tire & Rubber Co. v. United States Rubber Co., 6 Cir., 79 F.2d 948; Freeman v. Altvater, 8 Cir., 138 F.2d 854, 859; Cridlebaugh v. Rudolph, 3 Cir., 131 F.2d 795, 799.[1]

■ From this recital it is clear that there is no basis for the defendant's additional contention that, under § 252 of the Patent Act of 1952, the defendant, by beginning the manufacture of its device prior to the reissue acquired intervening rights to continue their operations. We are in accord with the conclusion of the District Judge that the claims of the reissue patent are valid.

As to infringement of the claims, the defendant argues now, for the first time,

but somewhat faintly, that its so-called "Reco Device" does not infringe the claims because it does not have either a fuel outlet connected to the upper portion of the tank or a water outlet connected to the bottom of the tank. The facts are to the contrary. The fuel outlet pipe enters the bottom of the defendant's device but it rises within the tank to the top in order to receive the lighter purified fuel. The defendant's water drain is connected to the side near the bottom. Whatever the difference between the two structures, the defendant's device is equivalent to that of the patent.

### United States Patent 2,800,232

■ This invention is described in the patent as an improvement in the cartridge disclosed in the inventor's prior patent on which Reissue Patent 24,136 was based. The claims of that patent, as we have seen, called for a cartridge "comprising resin-bonded fibrous filter material" for filtering the fuel out of the mixture; and the specifications showed that for this purpose a plurality of annular laminae of fibre glass, perferably bonded with a phenol formaldehyde resin, were packed and compressed within the cartridge. In the new Patent 2,800,232 of 1957, the patentee pointed out that it is a laborious and expensive procedure to make such a cartridge by compacting successive stacks of fibre glass of a thickness from 8 to 16 inches to a thickness of 1 inch and repeating this operation thirty or more times to form a single element, especially as the rings often become deformed and defective in the process and the degree of compressment may vary along the length of the tube. Accordingly, he developed a cartridge made up of fibre glass layers bonded with a resin such as a phenol formaldehyde, thermo setting resin similar to that used in the

---

1. Under the terms of 35 U.S.C. § 251, and under the decisions, it is clear that the *claims* of a reissue issued within two years of the original grant may be broader than the *claims* of an original patent so long as the new matter falls within the *disclosures* of the original patent. Topliff v. Topliff, 145 U.S. 156, 165, 12 S.Ct. 825, 36 L.Ed. 658; Sears, Roebuck & Co. v. Minnesota Mining & Mfg. Co., 4 Cir., 243 F.2d 136, 140; Rohm & Haas Co. v. Roberts Chemicals, 4 Cir., 245, F.2d 693, 699.

earlier patent, except that the fibre glass mat is constricted or compressed during the curing of the resin so that the fibre glass is held in the compressed or pre-densified compact state by the resin, wherein a predetermined quantity of fibre is bonded and compressed to a specified thickness.

The inventor testified that before he built his first outfit he found out that, in forming the cartridge, the fibre glass should be compressed to eight pounds per cubic foot and that he used this density in making the cartridge under his first patent; but finding the manufacture to be laborious and expensive, for the reasons above stated, he bought the glass already compacted, according to his specifications, to the density of eight pounds per cubic foot and thereby avoided the difficulties of manufacture and secured a cartridge of uniform density throughout its length.

The only claim of this patent which is involved in this suit is claim 3, which reads as follows:

"A water separator cartridge comprising a porous mass of fibre glass material, said material being forcibly compressed to a predetermined density, and a binder for said material for maintaining said predetermined density."

We can find nothing under these circumstances to justify the issuance of the second patent. With the disclosure of the earlier patent available it required no greater skill than that possessed by any person skilled in the art to determine that the pads of fibre glass should have a certain density to do effective work. Indeed, the inventor had already shown in his first patent that the fibre glass should be compacted under pressure. He did not limit his claims to any specific pressure, but finding by experiment that eight pounds per cubic foot was desirable he predetermined in practice to use this density. In the new patent the inventor does not specify the amount of pressure to be used in the manufacture of the cartridge and does not claim that he secured uniformity in

the completed product, but in practice he uses the same density as in the earlier patent. The only new disclosure in the second patent is that the services of an expert fibre manufacturer should be employed in the making of the cartridge. Certainly no invention was involved in discovering that it would be cheaper and more effective to employ an expert to do what the inventor found that he himself could not accomplish without difficulty and unnecessary expense. Accordingly, we reach the conclusion that the second patent was invalid for lack of invention.

The judgment of the District Court is affirmed insofar as it holds that Reissue Patent 24,136 is valid and infringed; but the judgment is reversed insofar as it holds Patent 2,800,232 is valid and infringed, and as to this patent the case is remanded with direction to issue a declaratory judgment of invalidity.

Affirmed in part, reversed in part and remanded.