**BOWSER, INC.**

v.

**The UNITED STATES.**

No. 25–61.

United States Court of Claims.

Dec. 15, 1967.

Clarence E. Threedy, Chicago, Ill., attorney of record, for plaintiff. Bernard Hoban, Chicago, Ill., of counsel.

William W. Fleming, Washington, D. C., with whom was Acting Asst. Atty. Gen. J. William Doolittle, for defendant. Thomas J. Byrnes, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

## OPINION

**PER CURIAM:**

This case was referred to Trial Commissioner Donald E. Lane with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in a report and opinion filed on December 21, 1965. Exceptions to the commissioner's findings and recommended conclusion of law were filed by the defendant, and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court is in agreement with the opinion and recommendation of the commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Plaintiff is, therefore, entitled to recover reasonable and entire compensation for the unauthorized use of claims 1, 2, and 3 of patent Re. 24,136, and judgment is entered to that effect. The amount of the recovery is to be determined in fur-

ther proceedings before the trial commissioner pursuant to Rule 47(c).

OPINION OF COMMISSIONER

LANE, Commissioner.

This is a patent suit under Title 28 U.S.C. § 1498, in which plaintiff seeks to recover reasonable and entire compensation for the unauthorized use of a patented invention. Plaintiff alleges infringement of claims 1, 2, 3, and 5 of reissued U. S. Letters Patent No. Re. 24,136 which issued to the plaintiff April 3, 1956, on an application filed January 19, 1956. The reissue application was based upon patent No. 2,725,986 issued December 6, 1955, to the plaintiff as assignee, upon an application filed August 25, 1950, by Harvey E. Marvel, the inventor and assignor. The reissued patent No. Re. 24,136 will be referred to as the patent in suit and patent claims 1, 2, 3, and 5 thereof as the claims in issue. Plaintiff is the owner of the entire right, title and interest in the patent in suit. It is found that the patent claims 1, 2, and 3 are valid and infringed and that patent claim 5 is valid but not infringed.

The invention disclosed and claimed in the patent in suit relates to a separator for removing water entrained or suspended in liquid fuels used in internal combustion engines. If the water is not removed from fuel subjected to low temperatures, the water will crystalize and plug screens, filters and other parts of an engine fuel supply system thereby restricting the flow of fuel to the engine possibly causing power failure. This problem is particularly dangerous for jet aircraft flying at high altitudes or in low temperature weather.

The invention as defined in the patent claims in issue relates to a water-fuel separator comprising a tank having an inlet for receiving a liquid mixture of water particles suspended in a liquid fuel and having two outlets, one for fuel disposed in the upper portion of the tank and the other for draining the water from the bottom. A baffle or deck plate is horizontally positioned between the inlet and the outlets forming an upper chamber and a lower chamber to prevent direct liquid communication between the inlet and outlets. Holes or ports are formed in the deck plate defining a liquid flow path between the chambers. Tubular shaped coalescing cartridges having closed lower ends and containing compressed resin-bonded fibrous material depend from the deck plate and receive therein liquid passing through the ports. The liquid mixture then flows radially outward through the fibrous material wherein the water particles wet the individual fibers and coalesce into drops. The water drops are dislodged from the fibers and are carried along by the liquid fuel. A straining shroud disposed externally of each cartridge receives the mixture issuing from its corresponding cartridge and passes the fuel therethrough but retains the water drops on the inside thereof. The water drops gravitate to the bottom of the tank to be drained therefrom. The fuel passing through the shroud continues on and flows out through the fuel outlet.

Plaintiff has charged that water-fuel separators purchased by the defendant from the Richmond Engineering Company, Inc., hereinafter referred to as the accused device, infringe the claims in issue. The parties have agreed that the issue of reasonable and entire compensation be deferred until the liability of the defendant has been established. The issue of liability, i. e., infringement and validity of the claims in issue, is now before the court.

Defendant contends that the patent in suit is invalid and also that the accused separator device does not infringe the patent claims in issue.

The claims in issue have previously been held to be valid in Richmond Engineering Co., Inc. v. Bowser, Inc., 264 F.2d 595 (4th Cir. 1959). Richmond Engineering Co., Inc. is the supplier of the accused device purchased by the defendant.

The patent laws provide that an issued patent carries a presumption

of validity placing the burden of establishing invalidity of a patent in the party asserting it. Title 35 U.S.C. § 282. The strength of the presumption varies with the substance of the assertion, e. g., if the asserting party relies on prior art that previously has been considered either by the Patent Office or by another court then the presumption of validity is strong, or if the asserting party cites prior art that is more pertinent than that considered by the Patent Office or another court then the presumption of validity is considerably weakened. See Preformed Line Products Co. v. Fanner Mfg. Co., 328 F.2d 265, 271 (6th Cir. 1964), and Ransburg Electro-Coating Corp. v. Proctor Electric Co., Inc., 203 F.Supp. 235, 243 (D.Md.1962), aff'd, 317 F.2d 302 (4th Cir. 1963).

The more pertinent prior art disclosures cited by the defendant were considered either by the Patent Office or by the court in Richmond Engineering Co., Inc. v. Bowser, Inc., supra. There is a strong presumption that the patent here in suit is valid.

■ Defendant contends that the claims in issue are vague, ambiguous and indefinite. The patent statute Title 35 U.S.C. § 112 requires that the claim language be sufficiently definite to point out and distinctly define the scope and boundaries of the claimed subject matter. Defendant asserts that the word "compressed" in claims 2 and 5 and the phrase "fibrous filter material" in claims 1 and 3 are too broad because they fail to incorporate the limitations recited in the preferred embodiment described in the patent specification. It is fundamental in the patent law that the claims are not confined to the particular embodiment disclosed in the description, as it is the claims rather than the specification which measure and define the invention. See Smith v. Snow, 294 U.S. 1, 11, 55 S.Ct. 279, 79 L.Ed. 721 (1935). The claims in issue adequately define the metes and bounds of the invention.

■ Defendant also contends that the patent specification is defective and fails to comply with Title 35 U.S.C. § 112. The statute requires that the description be sufficiently explanatory to enable any person skilled in the art to practice the invention. The disclosure called for need not be greater than that which is reasonable under the circumstances, having due regard to the nature of the subject matter involved. It is found that the description contained in the patent in suit clearly meets the minimum requirement of the statute.

Defendant further contends that the invention is inoperative based upon the fact that the first separator embodying the invention failed to remove 100% of the water from jet fuel. The evidence of record is clear that the said separator did remove a substantial amount of the water from jet fuel and was operable.

Central to the Government's defense is its argument that the invention defined by the claims in issue did not satisfy the requirement of "nonobviousness" dictated by 35 U.S.C. § 103 (1964).

For the reasons hereinafter stated, we reject defendant's contention and find that the invention was not obvious within the meaning of section 103.

■■ We recognize there is some disagreement among the courts and commentators of the extent to which section 103 was intended to codify earlier judicially declared standards of patentability. We find ourselves in accord with those who have interpreted section 103 as providing, along with the section 101 and 102 requirements of "utility" and "novelty", respectively, the *sole* tests of patentability in all cases. We feel, therefore, that section 103 has eliminated the need to apply "severe tests" of patentability such as "unusual and unexpected result" and "the whole must in some way exceed the sum of its parts," and the fact that a patent in issue is a combination patent provides no exception. We do not say that a finding, for example, of an "unexpected result" should be disregarded; clearly it can be considered as *one* of the factors contributing to "nonobviousness". However, we think that such a finding is only one of the factors which may be con-

sidered, and that its presence or absence alone is not dispositive of the issue of obviousness.

In our view the question of "nonobviousness" is properly resolved by a straightforward application of the objective guidelines announced by the Supreme Court in Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), to wit,

> Under § 103 the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy * * *.

The more important prior art cited is identified and discussed in detail in the accompanying findings of fact.

Defendant contends specifically that the claimed invention was anticipated by Robinson patent 2,555,607 and a commercially used separator substantially identical with the separator shown in said Robinson '607 patent. The Robinson device relates to the same liquid-separating art as the invention in suit. The separator is comprised of an elongated horizontal tank enclosure having a coalescing unit in one end and a separating unit in the other end. The coalescing unit comprises a tubular fiber glass coalescing mat horizontally positioned therein for coalescing the water particles into drops as the mixture flows radially inward therethrough before moving horizontally to a separating unit at the other end of the enclosure. The separating unit has a number of disc-shaped sheets which are pervious to a hydrocarbon

liquid and impervious to water. The Robinson patent '607 does not show a straining means disposed externally or surrounding the tubular fiber glass coalescing mat in an economically compacted space arrangement.

In 1947, Robinson developed a gasoline-water separator, a number of which were sold and delivered to the Army for removing undesired water particles from gasoline to be used in flame thrower devices. In 1948, Robinson, while employed by Fram Corporation, developed two experimental-model separators (AX–4075 and AX–4872) which were subsequently successfully tested by the defendant's Bureau of Ships under a testing program to determine the availability and suitability of gasoline-water-dirt separator-filter for filtering aviation grade gasoline aboard aircraft carriers. In 1949, Fram supplied the Navy Department with a separator-filter unit, designed by Robinson, for experimental use in a security-classified installation located at the Bayonne Annex of the New York Naval Ship Yard to *simulate* a high capacity fuel supply system for servicing airplanes with aviation grade gasoline aboard an aircraft carrier. At the completion of the testing, the Navy purchased eight additional separator-filter devices for use aboard aircraft carriers. The procurement contract was unclassified. Four of the separator devices were delivered to the Navy in April 1950, and the remaining four were delivered in August 1950. These separators did not have a straining means *disposed externally* of the coalescing cartridge as recited in the claims in issue. It is concluded that neither the separator devices designed by Robinson nor his '607 patent anticipates the invention defined in the claims in issue.

Defendant places reliance upon the teaching of Wilson patent 1,463,990 when combined with Cottrell patent 994,377 or Hills patent 1,787,577. The Wilson '990 patent discloses an oil separator for separating entrained particles of oil from compressed air and not a separator for separating entrained particles of water

from the liquid fuel used in internal combustion engines. The Wilson device has a cylindrical solid wall spaced from and surrounding the oil coalescing unit for deflecting downward the flow of the air and oil mixture flowing from the coalescing unit. Both the Cottrell '377 patent and the Hills '577 patent disclose what may be termed a cylindrical straining shroud or bag for removing drops of one liquid carried in the stream of another liquid by permitting the carrier liquid to pass therethrough while retaining the carried liquid drops. Defendant urges that it would be obvious to one skilled in the fluid filtering art to substitute the Cottrell or Hills shroud or bag for the Wilson deflecting wall. Such a substitution would change the Wilson deflecting wall to perform a different function to produce a different result. Such a substitution would not have been obvious to one skilled in the art at the time the Marvel invention was made unless the patent in suit was used as a blueprint to reconstruct the Wilson device.

Besides analyzing the patent claims with respect to the prior art to determine whether an invention was obvious at the time it was made, it is relevant to look at the circumstances before and after the invention was made and the acts and reactions of those skilled in the art during this period. See Reiner et al. v. I. Leon Co., 285 F.2d 501, 503–504 (2nd Cir. 1960). There was in 1953 a definite and substantial need existing for a separator that could effectively and economically remove water from jet fuel. The military services were particularly mindful of this need and went to considerable effort and expense in an endeavor to find a separator to adequately perform the task. The plaintiff's separator embodying the invention here in suit was the first separator to successfully pass rigid military testing. Subsequently the military purchased over 1,000 separators from plaintiff. Robinson, one extremely skilled in the art, was actively attempting to solve the problem. Not until 1954, 4 years after the invention in suit was made, and knowing that the

Army desired a separator of a vertical configuration, did he combine the elements as taught by the patent in suit. It was unobvious to Robinson in 1950 to combine the elements in the compact space arrangement as disclosed and claimed by Marvel in the patent in suit.

It is concluded that none of the prior art citations before the court either singly or together overcome the statutory presumption that the Marvel invention was novel and unobvious at the time it was made.

The defendant also contends that the invention claimed is a mere aggregation of old elements. As a point of clarification, "aggregation" is generally used in two different contexts. The term is used to mean that the combination of two or more elements in the patent claims, each of which is unrelated, each of which performs separately and without cooperation, does not define a composite integrated mechanism. Such a claim should be rejected on the basis that the claim does not properly set out the invention as prescribed by Title 35 U.S.C. § 112. See In re Gustafson, 331 F.2d 905, 51 CCPA 1358 (1964). The term aggregation is also used to mean that two or more coacting and cooperating elements are each individually shown in the prior art and that together they do not produce a new and useful result. See Colgate-Palmolive Company v. Carter Products, Inc., 230 F.2d 855 (4th Cir. 1956). Defendant uses the term aggregation in the latter context. Each of the elements of the claim in issue is shown in the prior art; however, as has been previously stated, the combination of the elements as recited in the claims in issue taken as a whole is new and unobvious and produces a new and useful result. It is significant that the defendant purchased 1,000 separators that embodied the claimed invention.

Defendant further suggests that the claims in issue overclaim the invention. It is concluded that the patent claims in suit do not overclaim in reciting in the combinations certain elements admittedly old *per se.*

Defendant also asserts that if the patent claims in issue are valid, the accused separator device does not infringe. The question is, do the patent claims in issue read on the accused device; i. e., does the accused device contain every element and limitation contained in the claims in issue? To resolve this question we apply the standard this court announced in Autogiro Co. of America v. United States, 384 F.2d 391, 181 Ct.Cl. —— (October 1967).

In summary, the determination of patent infringement is a two-step process. First, the meaning of the claims in issue must be determined by a study of all relevant patent documents. Secondly, the claims must be read on the accused structures. In doing this, it is of little value that they read literally on the structures. What is crucial is that the structures must do the same work, in substantially the same way, and accomplish substantially the same result to constitute infringement.

Applying this test we find that the accused device contains every element and limitation or the mere colorable variation thereof found in claims 1, 2 and 3. However, the evidence is not sufficient to conclude that the accused device infringes claim 5.

Summarizing, it is found that plaintiff is the rightful owner of the reissue patent in suit, that claims 1, 2, 3, and 5 thereof are valid in view of the prior art before the court, that the accused device infringes claims 1, 2, and 3, that the plaintiff is entitled to recover reasonable and entire compensation for such unauthorized use, and that the extent of liability should be determined in further proceedings pursuant to Rule 47(c).

COLLINS, Judge, took no part in the decision of this case.