United States Court of Customs and
Patent Appeals.
March 5, 1974.

Nathan Cass, Westlake Village, Cal.,
attorney of record, for appellant.

Joseph F. Nakamura, Washington, D.
C., for the Commissioner of Patents; R.
V. Lupo, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and
RICH, BALDWIN, LANE and MILLER,
Judges.

RICH, Judge.

This appeal is from the decision of
the Patent Office Board of Appeals af-
firming the rejection of claims 28–31 of
application serial No. 862,597, filed Au-
gust 27, 1969, entitled "Apparatus for
Woven Screen Memory Devices," on the
ground of "new matter" added by
amendment, under 35 U.S.C. § 132. The
application is for reissue of appellants'
U. S. patent No. 3,377,581, issued April
9, 1968. Claims 1–27 stand allowed.
We reverse.

### The Invention Described In The Reissue Application As Filed

The invention is a woven screen mag-
netic memory structure for use in com-
puters and data processing systems.
Claim 6 of the original patent, held al-
lowable on reissue, is as follows:

> 6. A woven screen structure suit-
> able for the deposition of remanent
> magnetic material thereon to provide
> a memory device comprising:
>
> a plurality of substrate wires and a
> plurality of control wires interwov-
> en to define a plurality of individu-
> al cells, each comprising at least one
> mesh of the interwoven substrate
> wires having selected control wires
> threaded therethrough; and
>
> a plurality of *idle wires* inter-
> spersed with the control wires be-
> tween adjacent substrate wires
> bounding a particular individual cell
> for determining the relative posi-
> tion of the control wires therein.
> [Emphasis ours.]

As explained by the introductory por-
tion of the specification, which we des-
ignate [A]:

> In accordance with the present inven-
> tion, machine woven planes are pro-
> vided by simultaneously weaving *bare
> substrate wires and insulated conduc-
> tors* on an automatic or manual loom

in a predetermined matrix, after which the resulting planes may be chemically processed to provide the finished magnetic screen memory devices. [Emphasis ours.]

A typical cell configuration of the woven screen memory structure is shown by the following diagrammatic figure, on an enlarged scale, from the present application and original patent:

Fig. 2

A grid of substrate wires 32 forms the square storage cell, the wires being coated with a magnetic material. These substrate wires are interwoven with control wires, variously designated as sense wires 34, Y–drive wires 36, X–drive wires 38, and inhibit wires 40, which are shown interwoven to form the depicted portion of the memory matrix. The issue here centers specifically on the "dummy" or "idle" wires 42 which "serve to provide the desired spacing between particular wires of the matrix and also may serve to control the threading of particular cells by the respective control wires."

The nature of the dummy wires appears from the following explanation, which appellants rely upon, and which we designate [B]:

In the weaving of the desired memory planes on automatic power looms, it has been found that the *insulated conductors* have a tendency to slip from their initial position in the mesh

of the substrate wires. In accordance with an aspect of the present invention, therefore, *additional conductors,* which may be referred to as "dummy" or "idle" conductors, are inserted at appropriate intervals during the weaving process to increase the packing of the conductors placed between adjacent substrate wires and thus affix the insulated conductors in a predetermined position relative thereto. [Emphasis ours.]

Finally, the nature of the substrate wires and the control wires is explained by the following quotation from the specification, which we designate [C]:

The substrate wires 32 may advantageously be bare copper wires which are ultimately coated with a magnetic layer to define the magnetic flux paths of a given storage cell. However, in the various embodiments of the present invention the substrate wires are not limited to bare copper wires but may be any metallic wires

on which a suitable magnetic coating may be deposited. Thus, *the substrate wires* 32 may, for example, comprise wires of another metal than copper, or they *may even be insulated wires or plastic filaments* having an outer surface which is suitably treated to permit the deposition of a magnetic coating thereon. The control wires are electrical conductors which serve to carry various currents employed in the operation of devices produced in accordance with the present invention. In general, *the control wires are insulated* to provide the desired electrical isolation of the various wires. [Emphasis ours.]

## The Prosecution

The instant application seeks to reissue entirely the original patent and add thereto eight new claims. Thus, the original patent, which contained claims 1–23, is incorporated without change in the reissue application which, as originally filed, added only claims 24–27, copied from a Bohannon, Jr., patent[1] to provoke an interference. These copied claims described the dummy wires as "non-conductive fibers" and were rejected by the examiner as lacking support in the original disclosure under 35 U.S.C. § 112 and as containing new matter under 35 U.S.C. § 132, the examiner being of the view that appellants' dummy wires were described in their specification as being "conductive," rather than "non-conductive" as claimed. Appellants vigorously traversed the rejection of claims 24–27 and attempted to show how their specification supported the "non-conduc-

tive" limitation, but, in the alternative, amended their application in accordance with the second sentence of Rule 205(a)[2] to add claims 28–31, which are identical to copied claims 24–27 except that the adjective "non-conductive" is omitted and the dummy wires described merely as "fibers." Representative of the appealed claims is claim 28:

28. A magnetic memory matrix in the form of a woven fabric comprising:

a plurality of parallel magnetizable conductive strands capable of assuming stable states of remanence;

a first plurality of fibers interspaced between the magnetizable strands;

a plurality of parallel control conductors arranged so that the control conductors cross the magnetizable strands; and

a second plurality of *fibers* interspaced between the control conductors and interwoven with the first fibers and the magnetizable strands such that the individual control conductors and magnetizable strands are maintained in predetermined relative positions. [Emphasis ours.]

The examiner, however, rejected amended claims 28–31 as containing new matter under 35 U.S.C. § 132.[3] Appellants appealed the rejection of all eight claims to the Board of Appeals.

## The Board Decision and the Issue

The board reversed the rejection of copied claims 24–27, agreeing with appellants that their specification support-

1.  U.S.Patent No. 3,399,389.

2.  205. *Interference with a patent; copying claims from patent.* (a) Before an interference will be declared with a patent, the applicant must present in his application, copies of all the claims of the patent which also define his invention and such claims must be patentable in the application. However, an interference may be declared after copying the claims excluding an immaterial limitation or variation if such immaterial limitation or variation is not clearly supported in the application or if the applicant otherwise makes

a satisfactory showing in justification thereof.

3.  The new matter rejection of claims 24–27 would more properly have been based upon 35 U.S.C. § 251 since they were alleged to contain matter which was "new" to, i. e., not supported by, the original patent. The rejection of claims 28–31 on the ground they contain "new matter" was probably made under 35 U.S.C. § 132, rather than § 251, because the claims were added by amendment to the reissue application.

ed the claim limitation to "non-conductive fibers," giving only the following reasons:

> The description teaches that there are two categories of woven elements namely: bare substrate wires, and insulated conductors. See column 2, lines 64 and 65 [portion [A] of the specification, supra]. Among the insulated conductors there are "dummy" or "idle conductors. See column 3, lines 27 through 41 [portion [B] of the specification]. We have considered the examiner's arguments. However, we find that the original disclosure, taken as a whole, teaches that the dummy wires are insulated and hence "non-conductive" in the sense that they will not short out the control wires.

However, said the board, "the absence of the phrase 'non-conductive' in the modified claims does constitute new matter." It therefore affirmed the rejection of claims 28–31 and the correctness of that decision is the issue before us.

### Appellants' Argument

Appellants argue that there can be no "new matter" in claiming the dummy wires merely as "fibers," without specifying that they be non-conductive, because the specification of their original patent, which was identically incorporated in their reissue application as filed, never *required* that the dummy wires be non-conductive. For support, appellants note particularly claim 6, supra, of their patent and reissue application which, among other claims, describes the dummy wires merely as "idle wires" with no "non-conductive" limitation.

Appellants maintain that it is only because they submitted the copied claims which contained the limitation to "non-conductive fibers" that the Patent Office raised any question of support for the naked term "fibers," and that "if no reference at all were made to the Bohannon, Jr., patent, it would be most unlikely that in light of applicants' original disclosure, anyone would expect that claims 28–31 would or should include a recitation requiring that the idle or dummy wires be non-conductive."

At oral argument appellants admitted that their preferred embodiment includes non-conductive fibers, but represent that their application does not limit the invention to such fibers. They rely upon the emphasized portions of quotation [C], supra, from their specification for this assertion and to answer the board's statement that "the original disclosure, taken as a whole, teaches that the dummy wires are insulated and hence 'non-conductive' in the sense that they will not short out the control wires." Appellants state that the portions we emphasized show that the substrate wires 32 may be "insulated wires or plastic filaments," i. e., non-conductive, and that "the control wires are insulated," thus suggesting that even dummy wires which are conductive, would not "short out" the insulated control wires.

### The Solicitor's Position

The solicitor agrees with the position of the board that the original disclosure "teaches that the dummy wires are insulated and hence 'non-conductive' in the sense that they will not short out the control wires." Answering appellants' argument based upon the original claims, such as claim 6, the solicitor maintains that the use of the term "idle wires" in the claims finds its definition in passages [A] and [B], relied upon by the board as describing the idle wires as "insulated conductors." The gist of the solicitor's argument, however, is summed up in the following paragraph from his brief:

> Since the patent disclosure (including claims 5 and 6) neither explicitly nor implicitly supports recitation of a breadth to include bare metallic wire or pure conductors, appellants' omission of the modifier "non-conductive," or its equivalent, necessarily results in new matter since "fibers" without any modifier is broad enough to include a pure conductor or bare metallic wire.

## OPINION

While claims 28–31 omit the modifier which is present in claims 24–27, the question whether they "introduce new matter into the disclosure of the invention" in contravention of § 132 must be judged by determining whether the alleged "new matter" is new to the *whole* application as filed. Since the rejection was made under § 132 and not under the reissue statute, § 251, the copied claims 24–27—being, as they are, part of the reissue application *as filed* —are part of the whole application for determining whether the amended claims contain new matter, but the copied claims are only *part* of the whole application. Entitled, we think, to at least equal weight are claims such as claim 6 which was also in the application as filed.

Comparing the appealed claims with claim 6 shows no omission of the modifier "non-conductive," but rather a description of the dummy wires in the same unqualified terms[4] as in the appealed claims. This being the case, we fail to see how there can be any new matter in defining what is admittedly the same element with the same breadth as it was defined in the application as originally filed.

The solicitor's statement that the phrase "idle wires" of claim 6 finds its definition in the portions of the specification which supposedly describe the idle wires as only "insulated conductors" is only partially correct; "the original disclosure, taken as a whole"—to use the words of the board—is available, and must be used, to determine whether added matter is or is not "new". First, as appellants have correctly noted, another portion of their specification, portion [C], has a bearing on the breadth of claim 6. Secondly, when the question is one of the breadth of a term and support therefor, an original claim may serve to show the breadth with which the invention is described.

As appellants have correctly pointed out, portion [C] describes the invention in terms such that electrical shorting out of the control wires by idle wires would not always occur since, in general, the control wires are insulated. This is not in any way inconsistent with the conclusion of the board that claims 24–27 are *supported* by the specification. The specification can *support* the genus of all "fibers" as well as the species of "non-conductive fibers." The specification does not teach that the fibers *must be* non-conductive.

The rejection of claims 28–31 as containing new matter is reversed.

Reversed.

---

4. There has been no challenge to the use of the term "fibers," which is apparently the language of the Bohannon, Jr., patent from which claims were copied, in place of the terms "wires" and "conductors" used in appellants' specification to describe the "dummy" or "idle" elements.