27 C.C.P.A.(Patents)

### In re WADSWORTH et al.
### Patent Appeal No. 4199.

Court of Customs and Patent Appeals.
Dec. 4, 1939.

Rehearing Denied Feb. 1, 1940.

Pennie, Davis, Marvin & Edmonds, of New York City (Raymond F. Adams, of New York City, Clarence M. Fisher, of Washington, D. C., and Ambrose A. Arnold, of New York City, of counsel), for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting claims 7 to 12, inclusive, of appellants' application for the reissue of a patent, No. 1,956,260, granted to them on April 24, 1934.

The ground of rejection was that substantially the same claims were cancelled by appellants during the prosecution of their original application in order to obtain their patent.

The examiner also rejected all of the claims of appellants' reissue application, twelve in number, upon the ground of unreasonable neglect and delay in discovering the defects of their patent and in applying for reissue.

The board reversed the examiner upon the rejection of claims 1 to 6, inclusive, upon the ground of unreasonable delay in applying for reissue, and these claims stand allowed; but as stated above, the board affirmed the rejection of the claims here on appeal upon the ground that claims directed to substantially the same subject matter were cancelled in appellants' original application.

Claim 9 is illustrative of the rejected claims and reads as follows: "9. In the method of treating a sugar syrup or melt to produce a substantially colorless product, the improvement which comprises treating washed sugar with a calcium hypochlorite and a phosphatic defecating agent."

Claim 1 is illustrative of the allowed claims and reads as follows: "1. In the method of treating a sugar syrup or melt to produce a substantially colorless product, the improvement which comprises treating washed sugar with an agent of the group consisting of chlorine and the hypochlorites, then with a phosphatic defecating agent, and thereafter adding to the liquid so treated a decolorizing and filtering carbon."

The distinction between the rejected and the allowed claims lies in the omission from the rejected claims of the last step set forth in the allowed claims.

The involved invention is sufficiently described in claim 9 above quoted. No prior art was cited.

There were only two reasons of appeal filed, which read as follows:

"1. The Board of Appeals erred in holding that claims 7 to 12 inclusive are directed to substantially the same method as claims 7 to 12 inclusive which were cancelled during the prosecution of the application which matured into the original patent, which it is sought to reissue by the present application.

"2. The Board of Appeals erred in holding that claims 7 to 12 inclusive were properly rejected because directed to substantially the same method as claims 7 to 12 inclusive which were cancelled during the prosecution of the application which matured into the original patent, which it is sought to reissue by the present application."

The oath of appellants filed with their reissue application sets out the illness of their patent attorney during the preparation of their original application and its prosecution in the Patent Office, and states that such illness "interfered with the proper functioning of his powers of understanding and memory." The oath states:

"* * * that the following is a true specification of the errors which it is claimed constitute such inadvertence, accident and mistake relied upon; first—the im-

proper understanding of the invention on the part of the attorney representing your deponents at the time of the preparation, filing and prosecution of the application resulting in the aforementioned Letters Patent; second—the illness of said attorney which apparently resulted in said misunderstanding; third—the unintentional misrepresentations made to your deponents by said attorney; and fourth—the false sense of security into which your deponents were lulled by said misrepresentations; that such errors so specifically specified, arose and occurred as follows:

\* \* \*"

The oath also contains the following:

"The following is a detailed specification of the errors which it is claimed constitute such inadvertence, accident, or mistake, relied upon, to wit:

\* \* \*"

The oath then proceeds to set out in detail the errors relied upon as constituting inadvertence, accident, or mistake, but the cancellation of claims in their original application is not mentioned as an inadvertence, accident, or mistake.

Appellant Wickenden also filed a supplemental affidavit setting out more in detail the physical and mental condition of their attorney (who died in October, 1933) prior to the issue of appellants' patent sought to be reissued; the ignorance of appellants as to their said attorney's physical and mental condition, and their reliance upon him in the preparation and prosecution of their application.

With respect to the prosecution of appellants' original application in the Patent Office the Board of Appeals in its decision stated:

"Appellants point out that after considerable difficulty in getting the application prepared, it developed that their patent attorney was in ill health and was unable to properly prosecute the same and after allowance permitted the same to become forfeited and it was not until after his death that the Office advised the applicants of the forfeiture, that when the patent was finally forwarded it was not immediately inspected, but later on the applicants discovered that it contained inaccurate description and that they have since that time diligently sought to have the same reissued to correct the mistake.

"It is not apparent to us that under the circumstances of this case appellants are chargeable with undue delay in view of the practice set out in our previous decisions, such as Ex parte Byck and Peakes, 25 U.S. Pat.Q. 211, 1935, and Ex parte Thiele, 36 U.S.Pat.Q. 112, 1937 and the rejection of unreasonable neglect and delay will not be affirmed."

■ The first question for consideration is whether, upon the record before us, we may consider the question of whether appellants' attorney, in the prosecution of the original application, cancelled claims therein through inadvertence and mistake. After carefully reviewing the record we conclude that this question is not properly before us.

As hereinbefore stated, appellants' oath does not set forth that such cancellation was inadvertent by reason of the mental condition of their attorney, although it does specify each item of mistake claimed to have been inadvertent.

The reasons of appeal do not assign error upon the part of the board in failing to find that such cancellation was inadvertent.

The second reason above quoted is broad, but in our opinion it does not include claimed error upon the part of the board in failing to hold that said claims were cancelled through inadvertence growing out of the mental condition of appellants' attorney.

This view is supported by the brief of appellants' counsel, from which we quote:

"The Errors Relied Upon

"The grounds of appeal (R. 25) are that the Board of Appeals erred in holding that new claims 7 to 12 inclusive (1) are directed to, and (2) were properly rejected because directed to, substantially the same method as claims 7 to 12 inclusive which were cancelled during the prosecution of the application which matured into the original patent.

"The Proposition of Fact Relied Upon

"The proposition of fact relied upon is that the method of treating a sugar syrup or melt to produce a substantially colorless product is not the same, or substantially the same, as the method of preserving a sugar syrup or melt to kill yeast, bacteria and mold, and the Board (and the Examiner) therefore erred in rejecting reissue claims 7 to 12 on the basis of original claims 7 to 12."

While it is true that later in their brief counsel state that the action of appellants' attorney who cancelled the claims in question could not have been deliberate be-

cause of his mental and physical condition, we think that this was an after-thought not in mind when the reasons of appeal were filed, especially in view of the fact that in appellants' oath filed with the reissue application the cancellation of said claims is not set forth as being inadvertent.

For the reasons above stated we cannot hold that the cancellation of said claims in the original application was inadvertent.

There remains the question of whether said claims so cancelled embraced the same subject matter as is embraced in the claims before us.

Claim 9 of appellants' original application is illustrative of the claims there cancelled and reads as follows: "9. The method of preserving a sugar syrup or melt, which comprises treating the same with calcium hypochlorite and thereafter with a phosphatic defecating agent."

It will be observed that the difference between cancelled claim 9 and claim 9 of the reissue application is that the cancelled claim embraces a method of *preserving* a sugar syrup or melt and claim 9 of the reissue application is directed to a method of *"treating* a sugar syrup or melt to produce a substantially colorless product" (italics ours); also, in the cancelled claim the treatment with a phosphatic defecating agent occurs after the treatment with calcium hypochlorite, while in claim 9 of the reissue application the treatment with both agents may occur simultaneously.

It is thus obvious that claim 9 of the reissue application is broader than cancelled claim 9, and the same is true of the other reissue and cancelled claims.

The record before us does not contain the official action with respect to said cancelled claims. The board in its decision, however, referred to this matter and stated: "The examiner has also rejected claims 7 to 12, inclusive, on the ground that certain claims were cancelled during the original prosecution in view of references directed to the same method as the present claims 7 to 12, inclusive. On investigation of the patented file of the original application, it appears that this statement of facts is substantially correct and that these claims were properly rejected for this reason."

There is no claim here that the statement above quoted respecting the reason for the cancellation of said claims is inaccurate, and we must assume that it is correct.

It is well established that when claims are deliberately cancelled in an original application in order to obtain a patent, claims for the same subject matter cannot be allowed in a reissue application. In re Guastavino, 83 F.2d 913, 23 C.C.P.A., Patents, 1179, and cases there cited.

Appellants strenuously insist that the method of preserving a sugar syrup to kill yeast, bacteria, and mold, as embraced in the cancelled claims, is not the same or substantially the same as the method of treating a sugar syrup to provide a substantially colorless product embraced in the reissue claims before us. Appellants' counsel in their brief state: "* * * As pointed out above, the process of the old claims results exclusively in the sterilization and preservation of sugar melts or syrups to kill bacteria, yeast and mold. The process of the new claims, on the other hand, results in the treatment of sugar melts or syrups to produce a substantially colorless product. * * *"

In said brief it is also stated:

"The confusion is no doubt due in large part to the fact that the language of the old claims is in part like the language of the new claims. The old claims are directed to a method of sterilizing or preserving sugar melts or syrups. For this purpose, *a very small amount* of chlorine, such as calcium hypochlorite, a chlorine yielding substance, is required. In order to obtain a substantially colorless product, however, *a much larger amount* of bleach liquor (calcium hypochlorite) must be employed. The patent makes clear that relatively large amounts of bleach liquor must be used and states that the process may be repeated in order to obtain the desired product.

"It is therefore apparent that, even though the old and the new claims call for the use of calcium hypochlorite, the words employed do not have the same meaning in both sets of claims. In the old claims the words mean the use of a very small amount of calcium hypochlorite—enough to kill yeast, bacteria and mold. In the new claims, on the other hand, the words mean the use of a relatively large amount of calcium hypochlorite—enough to obtain a purified and substantially colorless product.

"Similarly, in the new claims, the words mean the use of a relatively large amount of phosphatic defecating agent—sufficient to throw down the calcium and the iron as phosphate precipitates of those metals, and

to insure the cleansing action that these precipitates make possible. In the old claims, the words relating to the use of a phosphatic agent could have no meaning, because it does not, and cannot, function as a preserving or sterilizing agent."

With respect to the above quoted argument it is sufficient to say that we find nothing, either in appellants' original specification or in their reissue specificaton, to indicate that only very small amounts of calcium hypochlorite are required for purposes of sterilization, and that in order to obtain a substantially colorless liquid much larger amounts of calcium hypochlorite are required.

The proportions of calcium hypochlorite set forth in the reissue application are identical with those set out in the original application.

With respect to the purpose for which proportions are used appellants' patent as issued states: "* * * It may here be stated that the use of calcium hypochlorite or its equivalent, preferably in the form of "bleach liquor", will serve to check the growth of yeast, fungi, molds, etc."

The reissue application states:
"* * * The melt is preferably given a treatment which will kill bacteria, mold and other undesirable agencies which may be present in the melt and which would tend to adversely affect it commercially. While we may use various agents for this purpose, we prefer to use a chlorine generating agent, in the form of an aqueous solution. Ordinarily, however, we use a hypochlorite, preferably a hypochlorite of one of the alkali or alkaline earth metals, such as calcium hypochlorite, preferably in the form of "bleach liquor".

"In treating the melt with the calcium hypochlorite solution or equivalent agent, we may proceed substantially as follows:
* * *"

Then follow the same proportions of calcium hypochlorite as are given in the original application.

It is clear that appellants' reissue application teaches that the treatment with calcium hypochlorite in the same proportions as are set out in their original application will, with the subsequent treatment with a phosphatic defecating agent, result in a melt that is, to quote from the reissue application, "substantially bleached, or decolorized, and sterilized, and the im-purities are readily adsorbable and filterable."

It would thus appear that the process recited in the cancelled claims is the same as the process recited in the claims before us, except as to the objective claimed to be secured by the process recited in the cancelled claims. In such claims the process is stated to be for the purpose of preserving sugar syrup, while in the claims before us the process is stated to be for the purpose of producing a substantially colorless product.

In appellants' brief it is stated: "It will be evident to this Court that new claims 7 to 12 (R. 31) are directed to the applicants' method of treating a sugar melt or syrup to produce a substantially colorless product; and that old claims 7 to 12 (R. 26) are directed to a method of preserving a sugar syrup or melt to kill yeast, bacteria and mold."

The difficulty with appellants' contention is that the process recited in the cancelled claims is identical with the process recited in the claims before us, except that in the cancelled claims the treatment of the melt with a phosphatic defecating agent follows the treatment with calcium hypochlorite, while in the claims before us this order of steps is not required.

It seems clear to us that the same references to prior art that would defeat the cancelled claims would necessarily defeat the claims before us, for the processes recited in both sets of claims are essentially the same.

The difference between the cancelled claims and the claims at bar lies in their preamble, which is a statement of the purpose for which the process is used. It is not denied that the process recited in the reissue claims will result in preserving the sugar syrup, and the only difference between the two groups of claims is that the same process will, it is now claimed, do more than was claimed in the cancelled claims, viz., that the process as now claimed will result in a substantially colorless product.

We would here remark that a drawing accompanied the original application, showing the steps of treatment of raw sugar through to standard granulated sugar. The same drawing accompanies appellants' reissue application, so the order of steps in the treatment of the raw sugar appears to be identical in both applications.

In the case of In re Walker et al., 99 F. 2d 976, 978, 26 C.C.P.A., Patents, 739, we stated: "It is argued by the Solicitor for the Patent Office that the different purpose for which appellants allege their device is used appears to be merely stated in the preamble of the claims and that such a statement does not make the combination of elements any different. * * *

"We agree with the solicitor, * * *."

In the case of In re Adams, 88 F.2d 495, 497, 24 C.C.P.A., Patents, 1043, we said: "* * * The claims of Falge's patent embrace electric lamp filaments without limitation, and we think any licensee of Falge would have the right to use the method disclosed and claimed by him, in electric lamps of any size, and when his patent expires the public will have the same right. It is true that Falge had a very different object than the object of appellant, but the methods of both are identical so far as the first group of claims is concerned."

We are clear that the process here claimed is substantially the same process as was recited in the claims cancelled by appellants.

The reasons for the rejection of a claim in a reissue application (when similar claims have been rejected during the prosecution of the original application and such rejection was acquiesced in by the applicant) are set out at length in the case of Leggett v. Avery, 101 U.S. 256, 259, 25 L. Ed. 865. In that case the court stated: "It not unfrequently happens that, after an application has been carefully examined and compared with previous inventions, and after the claims which such an examination renders admissible have been settled with the acquiescence of the applicant, he, or his assignee, when the investigation is forgotten and perhaps new officers have been appointed, comes back to the Patent Office, and, under the pretense of inadvertence and mistake in the first specification, gets inserted into reissued letters all that had been previously rejected. In this manner, without an appeal, he gets the first decision of the office reversed, steals a march on the public, and on those who before opposed his pretensions (if, indeed, the latter have not been silenced by purchase), and procures a valuable monopoly to which he has not the slightest title. We have more than once expressed our disapprobation of this practice. As before remarked, we consider it extremely doubt-

ful whether reissued letters can be sustained in any case where they contain claims that have once been formally disclaimed by the patentee, or rejected with his acquiescence, and he has consented to such rejection in order to obtain his letters-patent. Under such circumstances, the rejection of the claim can in no just sense be regarded as a matter of inadvertence or mistake. Even though it was such, the applicant should seem to be estopped from setting it up on an application for a reissue."

We are in accord with the conclusion reached by the Board of Appeals and its decision is affirmed.

Affirmed.