**Application of Robert M. EAST and John A. Harmon.**

**Patent Appeal No. 9140.**

United States Court of Customs and Patent Appeals.

May 9, 1974.

**1362**

Sol L. Goldstein, Mount Prospect, Ill., atty. of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents. Robert D. Edmonds, Washington, D. C. of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 11–13 of application serial No. 724,313, filed April 1, 1968, entitled "Developer Mixes." The application is for reissue of appellants' U.S. Patent No. 3,320,169, issued on May 16, 1967.[1] Reissue claims 1–10 (identical to original claims 1–10) stand allowed. We affirm.

*The Invention Described In The Patent*

The invention described in the patent relates to electrophotographic processes for producing visible images and specifically to developer mixes for use in such

processes. The specification describes these developer mixes in the following passage, which we designate [A]:

The developer mixes of *this invention* are three component mixtures *consisting essentially* of (1) *magnetic carrier particles,* (2) toner particles haveing a particle size smaller than the particle size of the *magnetic carrier particles,* the toner particles consisting essentially of a discrete mixture of pigmented resin particles having the necessary triboelectric relationship to the *magnetic carrier particles* so that upon admixture the toner particles acquire a charge of the desired polarity to develop the image, and (3) an aliphatic acid having from 10 to 26 carbon atoms and/or a salt of such aliphatic acid, the cation of the salt being calcium, barium, sodium, lithium, magnesium, manganese, zinc, nickel, iron, cobalt, lead or ammonium. A mixture of any two or more of these aliphatic acids and/or salts can be used. For convenience and brevity the expression "additive" will be used herein to refer to such aliphatic acid, salt thereof or mixture of such salts, or mixture of such acids, or mixture of such salts and such acids. [emphasis ours]

The specification of the patent also contains a passage which we designate [B]:

The exact explanation of why the fatty acids and the salts thereof, herein disclosed, are effective to correct the problems of prior known developer mixes is not fully understood. The improvement in print density, reduced background and minimization of mix deterioration is believed to be due in part at least to the additive affecting the triboelectric relationship between *the carrier* and the toner. The additive tends to maintain a proper triboelectric charge balance between the

---

1. The record indicates that the assignee of the patent is Addressograph-Multigraph Corporation. The patent was granted on application serial No. 387,218, filed August 3, 1964, which was said to be a continuation-in-part of application serial No. 221,888, filed September 6, 1962.

toner and *the magnetic carrier particles* so that the attraction between the latter and the toner does not override the attractive force of the charged areas of the electrostatic recording member for the toner. In reversal printing, this balance permits the proper repulsion of the toner to effect adherence thereof to the areas of the print to which the developer powder should be applied. In positive printing, this balance enables the charged image areas to attract and hold the toner.

Moreover, the presence of the additive tends to improve the mobility of the components of the developer mixes resulting in better mixing or distribution of the toner relative to *the carrier particles,* particularly when fresh toner is introduced into the developer mix. With the developer mixes of this invention, the introduction of fresh toner along with additive in proportions of from 0.02 to 0.4 part by weight of additive per 100 parts by weight of *carrier* in the case of the reversal developer mix, and from 0.02 to 0.1 part by weight of additive per 100 parts by weight of *carrier* in the case of positive mix results in the more complete and uniform distribution of the fresh toner throughout the developer mix upon subjecting the mixture to agitation or mixing. Such mixing is conventional in the operation of electrostatic printing machines. [emphasis ours]

The patent contains eleven examples of specific developer mixes. In each example, the "carrier" is described as "powdered iron," but the specification also states that: [C]

The magnetic particles can be iron, ferrites, nickel, cobalt, or other magnetic particles having an average particle size of from 25 to 500 microns, preferably 25 to 150 microns, and always larger than that of the toner particles. For reversal developer mixes, the magnetic particles and the toner particles are chosen to have a triboelectric relationship such as to pro-

duce a negative charge on the toner particles when the two are mixed. For positive developer mixes, the magnetic particles and toner particles are chosen to have a triboelectric relationship such as to produce a positive charge on the toner particles when the two are mixed.

Appearing in the initial portion of the specification are two paragraphs each describing a different technique for applying developer mixes. One paragraph, which we designate [D], describes the "magnetic brush" technique:

One known technique of applying such reversal and positive developer mixes is the so-called magnetic brush technique involving the use of a mixture of larger magnetic particles, usually iron, and smaller toner or powder particles constituted of pigmented resin and the application of this developer mix by means of a cylindrical magnetic applicator roller on the periphery of which the magnetic brush is formed and reformed during the rotation of the applicator roller to maintain enough toner in the so-called brush for proper development of the image. The image bearing member, usually paper, is passed in substantially tangential contact with this brush with the side to be developed in contact or near contact with the brush and the opposite side, herein termed the back, positioned remote from the magnetic brush. Such type of developer is disclosed, for example, in the Paul B. Streich, Sr., United States Patent No. 3,003,462 granted October 10, 1961.

The other paragraph, which we designate [E], describes the "cascade" technique:

Another technique of developing electrostatic latent images involves the application of developer mixes by cascading said mixture over the charged surface. The electroscopic powder which adheres to the carrier particles is attracted by the imaged portions of the electrophotographic member adhering thereto as the carrier particles flow over the image.

The patent contains ten claims. Claim 1 is representative:

1. A developer mix for developing electrostatic latent images on photoconductive insulating material employing a magnetic brush for applying the developer to the latent images, which developer mix consists essentially of *magnetic carrier particles* and toner particles having a particle size smaller than the particle size of the *magnetic carrier particles*, the toner particles consisting essentially of a pigmented thermoplastic resin having a resistivity less than $10^{19}$ ohm-cm, and a particle size of from 1 to 75 microns, said toner particles being mixed with the *magnetic carrier particles* having a particle size of from 25 to 150 microns in the proportions of from 10 to 100 parts of *magnetic carrier particles* per part of toner particles by weight, and said developer mix containing from 0.02 to 0.4 part by weight of a third component per 100 parts by weight of carrier particles, said third component intimately mixed with and forming a coating on the exterior of said *magnetic carrier particles* and said toner particles, said third component being selected from the group consisting of (a) fatty acids containing from 10 to 26 carbon atoms; (b) a salt of such fatty acids, the cation of the salt being selected from the group consisting of calcium, barium, sodium, lithium, magnesium, manganese, zinc, nickel, iron, cobalt, lead and ammonium; (c) a mixture of said fatty acids; (d) a mixture containing at least one of said fatty acids and at least one of said salts; and (e) a mixture of said salts. [emphasis ours]

### The Reissue Application

The specification of the reissue application appears to be identical to that of the patent. Claims 1–10 of the reissue application are identical to patent claims 1–10 and they stand allowed. The legal issues in this appeal stem from new claims 11–13 filed in the reissue application. Claim 11 is representative:

11. A developer mix for developing electrostatic latent images on photoconductive insulating material, which developer mix consists essentially of *carrier particles* and toner particles having a particle size smller than the particle size of the *carrier particles* the toner particles consisting essentially of a pigmented thermoplastic resin having a resistivity of less than $10^{19}$ ohm-centimeters and a particle size of from 1 to 75 microns, said toner particles being mixed with the *carrier particles* in the proportions of from 10 to 100 parts of *carrier particles* per part of toner particles by weight, and said developer mix containing from 0.02 to 0.4 parts by weight of a third component per 100 parts by weight of *carrier particles* said third component intimately mixed with and forming a coating on the exterior of said *carrier particles*, and said toner particles, said third component being selected from the group consisting of (a) fatty acids containing from 10 to 26 carbon atoms; (b) a salt of such fatty acids, the cation of the salt being selected from the group consisting of calcium, barium, sodium, lithium, magnesium, manganese, zinc, nickel, iron, cobalt, lead and ammonium; (c) a mixture of said fatty acids; (d) a mixture containing at least one of said fatty acids and at least one of said salts; and (e) a mixture of said salts. [emphasis ours]

Claim 11 is broader than original claim 1 in that claim 11 omits certain limitations. Claim 1 limited the carrier particles to *"magnetic* carrier particles" having "a particle size of from 25 to 150 microns," and the preamble of claim 1 recited that the developer mix was for developing electrostatic latent images on photoconductive insulating material "employing a magnetic brush for applying the developer to the latent images." Reissue application claims 12 and 13 also omit these same recitations.

### Proceedings In The Patent Office

The examiner rejected new reissue claims 11–13 on four grounds: (1) un-

der 35 U.S.C. § 251[2] as being drawn to "new matter"; (2) under 35 U.S.C. § 112 [first paragraph] as being drawn from an inadequate disclosure; (3) under 35 U.S.C. § 112 [second paragraph] as failing to particularly point out and distinctly claim the invention because of appellants' failure to recite the necessary particle size of the carrier; and (4) under 35 U.S.C. § 251 on the ground that no "error" had been shown in limiting the original patent claims with respect to the size of the carrier particles.

The board affirmed the examiner on the two rejections based on § 251 and on the rejection based on § 112, first paragraph. The board refused to review the rejection based on § 112, second paragraph, for the reason that appellants had acquiesced in a similar rejection during the original prosecution of the application which issued as the patent and had inserted the range of particle sizes for the carrier particles in order to overcome the rejection.

With respect to the first rejection based on § 251, the board's opinion states:

* * * We find no support in the record for the expansion of the claimed invention so as to include non-magnetic carrier particles. The specification clearly restricts the invention to developer mixes containing magnetic carrier particles (note especially [[A]]) and the original patent claims reflect this limitation. Although the discussion of the prior art [in [E]] of the specification includes a description of the cascade method, no indication whatsoever is made that the developer mixes being disclosed can be employed in such a technique. In fact, despite this acknowledgment of the cascade method of development, the invention, as disclosed and as originally claimed, is limited to developers for the magnetic brush technique.

Accordingly, we find that the appealed claims are barred under 35 USC 251, not being directed to "the invention disclosed in the original patent" and not being in compliance with the requirement that "no new matter shall be introduced into the application." * * *

*Appellants' Contentions*

Appellants' first contention is that the disclosure in the original patent of the cascade development technique in [E] "discloses *a fortiori* non-magnetic carrier particles." Appellants cite In re Smythe, 480 F.2d 1376, 1384 (Cust. & Pat.App.1973) and they state that the use of "carrier particles generally" in the improved developer mix would "naturally occur" to a person of ordinary skill in the art upon reading the specification when it was originally filed in 1964. In support of this argument, appellants rely on two affidavits—one by Dr. Luther C. Browning and one by Dr. Charles A. Kumins—presented to the examiner. Appellants say that it is important to understand that the developer mix which is useful in magnetic brush systems can be used to full advantage in cascade systems, and that the Kumins affidavit and the Browning affidavit bring out this fact.

Appellants' second contention is that the original patent specification in [B] supports their position that "the disclosure is not limited to magnetic carrier particles" since "carrier particles" is used therein "without any specific identification as to whether they are magnetic or non-magnetic [particles]."

2. § 251. *Reissue of defective patents*
Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue. [first paragraph only]

## OPINION

We agree with the board's conclusion that claims 11–13 were properly rejected under 35 U.S.C. § 251 since they broadly recite the genus of "carrier particles" which is *not* "disclosed in the original patent." The original patent discloses only the sub-genus of "magnetic carrier particles" and the species of "iron, ferrites, nickel, [and] cobalt" carrier particles. Hence, claims 11–13 are drawn to "new matter" in the sense of subject matter which is not described in the original patent. See In re Welstead, 463 F.2d 1110, 59 CCPA 1105 (1972), In re Bowen, 492 F.2d 859 (Cust. & Pat.App. 1974), and In re Boles, 493 F.2d 658 (Cust. & Pat.App.1974).

Appellants' first contention is that the disclosure in the original patent of the cascade development technique in [E] *inherently* discloses non-magnetic carrier particles to one skilled in this art. The board stated that despite this disclosure of the cascade technique there was not even an indication that the developer mixes containing *magnetic* carrier particles could be used in such a technique. Appellants dispute the board's view on the ground that the Kumins affidavit and the Browning affidavit indicate that one skilled in the art would know that developer mixes containing magnetic carrier particles can be used in both the magnetic brush technique and the cascade technique.

We agree with appellants that the Kumins affidavit and the Browning affidavit indicate that one skilled in the art would know that developer mixes containing magnetic carrier particles could be used in both techniques. For example, the Kumins affidavit states: "Magnetic (e. g. iron) carrier particles can be used in cascade development as well as non-magnetic particles * * *." However, this fact does not help appellants' case. We believe it is consistent with appellants' affidavit evidence to view the disclosure of the cascade technique in [E] as merely the disclosure of an additional means of using the developer mixes containing *magnetic* carrier particles. Hence, the disclosure of the cascade technique does not necessarily *describe* the use of a developer mix containing *non-magnetic* carrier particles.

Viewing the disclosure of the cascade technique in this way distinguishes In re Smythe, supra, where it was " * * * the description of the *properties and functions* of the 'air or other gas' segmentizing medium described in appellants' specification which would suggest to a person skilled in the art that appellants' invention includes the use of 'inert fluid' broadly." (480 F.2d at 1384) (emphasis in original)

Furthermore, we find that the original patent specification in [A] states that the developer mixes are three component mixtures *"consisting essentially"* of (1) *"magnetic* carrier particles," (2) "toner particles," and (3) the "additive." This language suggests *exclusion* of other types of carrier particles. We cannot apply the principle of In re Smythe when the express language of the specification militates against the application of that principle.

Appellants' second contention is that the original patent specification in [B] is not limited to magnetic carrier particles. We believe it would be improper to interpret passage [B] as describing anything other than *magnetic* carrier particles. The terms "carrier" and "carrier particles" do appear in passage [B] without the adjective "magnetic." But "magnetic" is clearly implied by the context as shown by the third sentence in passage [B] where *"magnetic* carrier particles"* appears. Furthermore, the terms "carrier" and "carrier particles" in [B] must be read in light of the whole specification, including [A] which expressly limits the invention to *magnetic* carrier particles.

Since the claims were properly rejected under § 251, as drawn to "new matter", we do not reach the other issues raised in this appeal. For the reasons set forth, we affirm the decision of the board.

Affirmed.