Theodore C. PATECELL, et
al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 434–85C.

United States Claims Court.

April 18, 1989.

Glenn L. Stephenson, Seaford, N.Y., for plaintiffs.

Joseph A. Hill, with whom were Asst. Atty. Gen. John R. Bolton and Vito J. DiPietro, Director, Washington, D.C., for defendant.

## OPINION

ANDEWELT, Judge.

In this patent action, plaintiffs, Theodore C. Patecell (Patecell) and The Patecell Corporation, seek compensation under 28 U.S.C. § 1498 for the alleged unauthorized use by the United States of a flat tire safety insert allegedly covered by the claims of two patents owned by plaintiffs, United States Patent No. 4,270,592 (the '592 patent), and United States Reissue Patent No. Re 28,196 (the reissue patent). This action is presently before the court on defendant's motion for partial summary judgment, which involves only claim 29 of the reissue patent.

Defendant contends that claim 29 is invalid for failing to satisfy each of three

requirements of 35 U.S.C. § 251, the statute governing grants of reissue patents. First, defendant contends that the "error" upon which plaintiffs rely is not sufficient to support claim 29; second, defendant contends that claim 29 does not cover the "invention disclosed in the original patent"; and third, defendant contends that "new matter" was improperly introduced in the reissue patent application. For the reasons set forth herein, defendant's motion for partial summary judgment is denied as to each ground.

### Facts

*Subject Matter of the Patecell Reissue Patent*

The Patecell reissue patent discloses an automobile tire insert that is designed to preserve the mobility of a vehicle in the event of a flat tire or blowout. The insert is shaped somewhat like a doughnut and fits around the wheel rim inside the tire. The inner periphery of the insert fits around the wheel in concentric fashion and the outer periphery extends toward the inner side of the tire tread but does not touch the tread when the tire is inflated. The insert is segmented into two arcuate members made of rigid material that can be bolted together to surround the wheel rim. Figure 5 of the reissue patent shows the insert fitted around the tire rim with one end bolted and the other not yet bolted.

FIG. 5

Figure 1 shows the insert secured around the rim with both ends bolted.

FIG. 1

In the event of a blowout, the Patecell insert allows a vehicle to be driven a short distance because the deflated tire is supported on the outer periphery of the insert. Figure 2 of the reissue patent is a sectional view of the mounting rim, the insert, and the tire in both an inflated and a deflated (dotted lines) state. The tire is labeled 28, the inner and outer peripheries of the insert are labeled 23 and 29, respectively, the mounting rim drop-center is labeled 24, and the rim flanges are labeled 26.

FIG. 2

*Prosecution History of the Patecell Original Patent*

The Patecell reissue patent is a reissue of United States Patent No. 3,635,273 (the original patent or the '273 patent). The original patent application was filed on October 9, 1969, by Theodore C. Patecell. It contained one independent claim (claim 1) and 26 dependent claims (claims 2–27). Claim 1 as originally filed provided:

1. A safety insert for inflatable tires of the tubeless type wherein beads at the inner open periphery of the tire are adapted to sealably engage side flanges

of a mounting rim and said rim intermediate the flanges has a drop-center of reduced diameter facilitating attachment and detachment of the tire, said safety device comprising a plurality of similar arcuate members having detachable coupling means at the ends thereof permitting assemblage as a ring member having an inner periphery seating in the drop-center of said rim and an outer periphery protruding beyond the flanges of said rim, said inner and outer peripheries of the ring being formed of rigid plastic material having lubricant qualities, and means joining said inner and outer peripheries in a lightweight structure providing a radial compressive strength appropriate to withstand the loads for which the particular tire is intended.

Claim 13 as originally filed was dependent upon original claim 1 and described a specific design of the coupling system for the safety insert described in claim 1. Claim 13 provided:

13. A safety insert for inflatable tires as defined in claim 1 wherein each of said arcuate members has at one end an essentially circular coupling portion extending to one side of the longitudinal centerline of said element, and at the other end an essentially circular coupling portion extending to the other side of said centerline, said first end carrying in the center of said circular portion a female coupling means and said second end carrying in the center of said circular portion, a male coupling means.

On February 5, 1971, the Patent and Trademark Office (PTO) examiner rejected claim 1 and most of the dependent claims as being obvious and hence unpatentable based upon the disclosures of a group of prior art patents. The examiner indicated, however, that certain of the dependent claims, including claims 13–16 (claims 14–16 were dependent upon claim 13), contained patentable subject matter and that a patent would be granted covering that subject matter if the pertinent dependent claims were redrafted in independent form.

In response, Patecell amended claim 1 to incorporate what he indicated to be the "essential features" of claims 13–16. The amended claim specified that the coupling means at the ends of the arcuate members of the safety insert are "pivotal" so as to permit "subassemblage" within a tire and "final assemblage" about a rim by coupling a single joint. Claim 1 as so amended is set forth below with the additions to original claim 1 underlined and the deletions bracketed.

1. (Amended) A safety insert for inflatable tires of the tubeless type wherein beads at the inner open periphery of the tire are adapted to sealably engage side flanges of a mounting rim and said rim intermediate the flanges has a drop-center of reduced diameter facilitating attachment and detachment of the tire, said safety device comprising a plurality of similar arcuate members having *pivotal and* detachable coupling means at the ends thereof permitting [assemblage as] *subassemblage within a tire, and final assemblage about a rim with one tire bead in engagement with said rim by coupling a single joint, to form* a ring member having an inner periphery seating in the drop-center of said rim and an outer periphery protruding beyond the flanges of said rim, said inner and outer peripheries of the ring being formed of rigid plastic material having lubricant qualities and means joining said inner and outer peripheries in a lightweight structure providing a radial compressive strength appropriate to withstand the loads for which the particular tire is intended.

On June 7, 1971, the PTO examiner rejected amended claim 1 under 35 U.S.C. § 103 based upon the same group of prior art patents cited in his rejection of the original claim 1, plus two additional patents. The examiner reiterated the position that certain dependent claims, including claim 13, contained patentable subject matter and that a patent would be granted covering that subject matter if the appropriate dependent claims were redrafted in independent form.

In response to the examiner's rejection of amended claim 1, Patecell amended claim 1

a second time to change the description of the structure and characteristics of the safety insert. Claim 1 as amended a second time is set forth below with the additions to first amended claim 1 underlined and the deletions bracketed.

1. (Twice Amended) A safety insert for inflatable tires ... said safety device comprising a plurality of similar arcuate members [having pivotal and detachable coupling means at the ends thereof permitting subassemblage within a tire, and final assemblage about a rim with one tire bead in engagement with said rim by coupling a single joint], *each of said arcuate members having at each end essentially circular coupling portions of reduced thickness in the plane of said members to interfit with coupling portions on adjacent members, said circular portions having at the centers thereof co-acting coupling means providing, when loosely coupled, wide coplanar pivotal movement of adjacent arcuate members, whereby after partial assemblage within a tire, and then mounting one tire bead on a rim, the subassemblage can be passed over the rim and into the drop-center thereof for final assemblage about the rim by coupling a single joint, and said coupling means providing firm clamping of interfitting coupling portions of said plurality of arcuate members* to form a ring member having an inner periphery seating in the drop-center of said rim and an outer periphery protruding beyond the flanges of said rim....

Thus, the second amendment further restricted claim 1, *inter alia,* by limiting the coupling means to "essentially circular coupling portions of reduced thickness" with "said circular portions having at the centers thereof co-acting coupling means." Patecell explained to the PTO examiner that the language he used in the second amendment avoided "the undue restriction in claim 13," which limited the patent to a structure involving circular coupling members that interfit by overlapping.

After the second amendment, the examiner allowed independent claim 1 and de-

pendent claims 2–28, and the '273 patent was issued on January 18, 1972.

*Prosecution History of the Reissue Patent*

On January 10, 1973, less than one year after issuance of the '273 patent, Patecell filed a reissue application pursuant to 35 U.S.C. § 251. Section 251 provides, in pertinent part:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

\* \* \* \* \* \*

No reissue patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.

The applicable Rule of Practice of the PTO, 37 C.F.R. 1.175(a)(4) (1973) (current version at 37 C.F.R. 1.175(a)(5) (1988)), requires applicants for reissue patents to file an oath or declaration "[p]articularly specifying the errors relied upon, and how they arose or occurred." In his declaration, Patecell explained that his invention comprised both a "broad" and a "specific" improvement in safety tire inserts. The "broad" improvement was "the provision of an insert of ring-like contour ... having an inner periphery closely and circumferentially engaging the tire rim, whereby the direct engagement between the inner periphery of said ring and said rim facilitates free rotation of the insert about said rim when driving on a deflated tire." The "specific" improvement was a "particular coupling means between the arcuate members which permits quick and easy assem-

blage and disassemblage of the insert with respect to the tire rim." Patecell's purported error in the prosecution of the original patent was responding to the prior art citations by limiting all of the patent claims to the "specific" improvement in claim 1 and not directing any claims to the "broad" improvement. Thus, Patecell alleged that as a result of this error he claimed "less than he had a right to claim" and is therefore entitled to a reissue patent under Section 251.

To correct this alleged error, Patecell added new claims 29–51 to the 28 claims that had been allowed in the original application. Claim 29 was the only independent additional claim and claims 30–51 were dependent, either directly or indirectly, upon claim 29. Claim 29, which was ultimately issued without amendment, provides:

> A safety insert for inflatable tires of the tubeless type wherein beads at the inner open periphery of the tire are adapted to sealably engage side flanges of a mounting rim, said safety device comprising a plurality of arcuate members, each of said arcuate members having at each end coupling portions interfitting with coupling portions on adjacent members, means for detachably securing together said interfitting coupling portions to thereby assemble said arcuate members as a ring member having an inner periphery closely and circumferentially engaging said rim and an outer periphery protruding beyond the flanges of said rim, means at the inner periphery of said ring and cooperating with said rim to maintain said safety insert in predetermined axial alignment with said rim, whereby the direct engagement between the inner periphery of said ring and said rim facilitates free rotation of said insert about said rim when driving on a deflated tire, and means joining said inner and outer peripheries in a lightweight structure providing a radial compressive strength appropriate to withstand the loads for which the particular tire is intended.

The reissue application also added the following paragraph to the specification of the original patent:

It appears that once a tire is sufficiently deflated to be in constant contact with the insert the slippage will take place primarily between the drop-center of the wheel and the closely conforming inner periphery of the insert. In other words, when riding on a fully deflated tire the speed of movement of the contacting portions of the tire and outer surface of the insert will be substantially the same, but the inner surface of the insert will be sliding with respect to the surface of the drop-center of the rim as the insert rotates, bearing fashion, about the rim.

Initially, the patent examiner rejected claims 29–51 as unpatentable over prior art. In addition, the examiner rejected claims 1–51 as being based on a declaration that did not satisfy the PTO Rule 175(a)(4) requirement that the declaration "particularly specif[y] the errors relied upon and how they arose or occurred." With respect to the insufficiency of the declaration, the examiner noted that the claims in the original patent contained limitations not found in claim 29 and that these limitations were not discussed in the declaration. As an example, the examiner noted that claim 29 did not contain the limitation found in claim 1 of the original patent that the inner and outer peripheries of the insert be formed of rigid plastic material having lubricant qualities.

In his response, Patecell contended that the prior art did not render claims 29–51 unpatentable and that the existing declaration was adequate. Patecell explained the absence of the reference in claim 29 to the insert being formed of plastic material having lubricant qualities, as follows:

> While claim 29 in its present form does not state in so many words that the inner periphery of the insert is 'formed of rigid plastic material having lubricant qualities', it is submitted that, with the disclosure as a background, this detail is sufficiently embraced in that portion of claim 29 which reads 'means at the inner periphery of said ring ... whereby the direct engagement between the inner periphery of said ring and said rim facili-

tates free rotation of said insert about said rim when driving on a deflated tire'. Patecell offered to consider inserting a limitation in claim 29 that the "said inner periphery [is] formed of rigid plastic having lubricant properties," if the examiner thought that such a change would improve the claim.

In response to Patecell's arguments, the patent examiner withdrew his rejection of the claims based on prior art. The examiner maintained, however, the rejection of claims 1–51 based on the insufficiency of the declaration. The examiner stated:

> The rule states that the errors relied upon be particularly specified. Specifically, the language in claim one which limits said claim to the 'preferred coupling means' should be quoted exactly in an appropriate place in said declaration instead of applicant's general reference to the structure in question contained in the present said declaration. A declaration which complies with said rule fully will overcome this rejection, rendering all claims allowable.

Patecell responded to this rejection by submitting an amended declaration. The only change made to the original declaration was the insertion of the exact language in claim 1 of the original application that Patecell believed erroneously limited the claims to the "preferred coupling means." The inserted language is as follows:

> [E]ssentially circular coupling portions of reduced thickness in the plane of said members to interfit with coupling portions on adjacent members, said circular portions having at the centers thereof coacting coupling means providing, when loosely coupled, wide coplanar pivotal movement of adjacent arcuate members, whereby after partial assemblage within a tire, and then mounting one tire bead on a rim, the subassemblage can be passed over the rim and into the drop-center thereof for final assemblage about the rim by coupling a single joint, and said . . . .

The examiner responded favorably to the amended declaration and reissue pat-

ent '196 was issued on October 15, 1974. The reissue patent included original claims 1–28 and new claims 29–51.

## Discussion

### I.

■ Reissue claims, like original patent claims, are presumed valid and the burden of proving otherwise resides with the party challenging validity. *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139, 227 USPQ 543, 548 (Fed.Cir.1985). Defendant's first attack on the validity of claim 29 is that plaintiffs have not satisfied the 35 U.S.C. § 251 reissue requirement that the original patent was partly inoperative or invalid as a result of "error." As explained above, plaintiffs contend that Patecell erred in limiting the claims in the original patent to the "specific" improvement involving a particular coupling means and failing to include claims directed exclusively to the "broad" improvement described in reissue claim 29. Defendant argues, however, that this purported mistake is insufficient to constitute Section 251 "error."

■ Defendant relies upon a series of cases that develop a general rule for evaluating the existence of Section 251 "error," which ultimately became known as the "recapture rule." *See, e.g., Ball Corp. v. United States*, 729 F.2d 1429, 1436, 221 USPQ 289, 295 (Fed.Cir.1984); *Haliczer v. United States*, 356 F.2d 541, 545, 174 Ct.Cl. 507, 514–15, 148 USPQ 565, 569 (1966); *In re Byers*, 230 F.2d 451, 456, 43 CCPA 803, 807–08, 109 USPQ 53, 55–56 (1956); *In re Wadsworth*, 107 F.2d 596, 599, 27 CCPA 735, 739, 43 USPQ 460, 463 (1939). Under the recapture rule, a patentee ordinarily is barred from securing through reissue a claim that is of the same or of broader scope than those claims that were cancelled or narrowed by amendment during the prosecution of the original patent. *See, e.g., Ball Corp.*, 729 F.2d at 1436, 221 USPQ at 295; *Byers*, 230 F.2d at 456, 43 CCPA at 807, 109 USPQ at 56. The rationale for this rule is that when a patent applicant responds to a PTO rejection of a claim by cancelling or amending the claim, the action is ordinarily considered a deliber-

ate, intentional act and not "error." *See, e.g., Ball Corp.*, 729 F.2d at 1435, 221 USPQ at 294; *Haliczer*, 356 F.2d at 545, 174 Ct.Cl. at 514–15, 148 USPQ at 569; *Byers*, 230 F.2d at 455, 43 CCPA at 806, 109 USPQ at 55–56. *See also Leggett v. Avery*, 101 U.S. 256, 259–60, 25 L.Ed. 865 (1879); *Dobson v. Lees*, 137 U.S. 258, 264–65, 11 S.Ct. 71, 72–73, 34 L.Ed. 652 (1890). If the original decision to cancel or narrow a claim is not the product of "error," the patentee may not, consistent with Section 251, "recapture" that claim through the reissue process. Nor can a patentee use reissue to secure a claim that is broader in scope than the cancelled claim. As the court in *Byers* explained:

It is well settled that the deliberate withdrawal or amendment of a claim in order to obtain a patent does not involve inadvertence, accident or mistake and is not an error of the kind which will justify a reissue of the patent including the matter withdrawn.

\* \* \* \* \* \*

It is evident that since the deliberate cancellation of a claim in order to obtain a patent constitutes a bar to the obtaining of the same claim by reissue, it necessarily also constitutes a bar to the obtaining of a claim which differs from that canceled only in being broader.

230 F.2d at 455–56, 43 CCPA at 806–07, 109 USPQ at 55–56.

Defendant contends that the recapture rule is controlling here because claim 29 is of the same or of broader scope in every respect than claim 1 as first amended (hereafter cancelled claim 1), which was cancelled during the prosecution of the original patent application.

## II.

Plaintiffs contend that the recapture doctrine does not apply because claim 29 is narrower than cancelled claim 1 in two respects. Plaintiffs rely on the following limitation in claim 29:

[M]eans at the inner periphery of said ring and cooperating with said rim to maintain said safety insert in predetermined axial alignment with said rim, whereby the direct engagement between the inner periphery of said ring and said rim facilitates free rotation of said insert about said rim when driving on a deflated tire. . . .

First, plaintiffs contend that claim 29 is narrower than cancelled claim 1 in requiring that the direct engagement of the rim and the inner periphery of the insert result in the insert rotating about the rim. Plaintiffs argue that cancelled claim 1 does not specifically mention slippage or rotation much less require that the slippage occur at the rim.

In response, defendant contends that cancelled claim 1 necessarily implies slippage at the rim by requiring that the inner as well as the outer peripheries of the insert be constructed of plastic materials having lubricant qualities. To support this position, defendant relies primarily upon statements in the specification to the effect that slippage is required to dissipate heat resulting from friction, and that slippage is produced by constructing the peripheries of the insert from plastic materials having lubricant qualities.

But the specification does not specifically state that there will always be slippage at the rim whenever the inner and outer peripheries of the insert are constructed of plastic materials having lubricant qualities. Moreover, the specification at least arguably suggests to the contrary. In a general description of the invention, the specification states that slippage can occur at the tire "and/or" at the rim, providing that in the event of tire deflation, "the material employed at the inner and outer peripheries . . . permit[s] slippage between the insert and the inner surface of the tire *and/or* between the insert and the rim." (Emphasis added.) Therefore, claim 29 arguably is narrower in scope than cancelled claim 1 in that claim 29 requires slippage at the rim while cancelled claim 1 arguably does not.

Second, plaintiffs contend that claim 29 is narrower than cancelled claim 1 in requiring the facilitation of "free rotation" about the rim. Plaintiffs contend that "free rotation" is a narrower term than

"slippage," *i.e.*, that free rotation is one type of slippage that involves a minimum degree of friction. Therefore, plaintiff contends, even if cancelled claim 1 were interpreted as requiring some slippage about the rim, it would not require the slippage to be so great as to facilitate "free rotation."

The term "free rotation" is present in the reissue claims and does not otherwise appear in the specification. However, plaintiffs' proposed interpretation of that term appears to have at least arguable support in the specification. The specification indicates that "the lubricant characteristics [of the insert peripheries] are of primary importance in minimizing the generation of heat and associated damage to either the insert or the tire." Different plastics presumably have different lubricant qualities, and arguably, therefore, not all plastic materials having lubricant qualities would necessarily result in sufficient slippage so the direct engagement between the insert and the rim could be said to facilitate "free rotation."

It must be stressed, however, that the court is not making any final determination as to the scope of the respective claims. The court, after taking evidence at trial, may ultimately conclude that defendant's interpretation of the scope of the respective claims is correct and that claim 29 is not narrower than cancelled claim 1 in any respect. But in evaluating a motion for summary judgment, the facts must be interpreted in a manner most favorable to the party opposing summary judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Herein, for the reasons detailed above, the specification at least arguably supports plaintiffs' contention that claim 29 is narrower than cancelled claim 1 in two respects.

### III.

While claim 29 arguably is narrower than cancelled claim 1 in two respects, it is not disputed that claim 29 is broader in other respects. For example, unlike cancelled claim 1, claim 29 does not require that the coupling means be pivotal so as to permit subassemblage within the tire, and does not require final assemblage about the rim by coupling a single joint. In addition, unlike cancelled claim 1, claim 29 does not require that the inner and outer peripheries of the insert be made of plastic materials.

The United States Court of Appeals for the Federal Circuit (CAFC) considered the validity of a reissue claim that was broader than a cancelled claim in some respects and narrower in others in *Ball Corp.*, 729 F.2d at 1437, 221 USPQ at 295. Stressing that the recapture doctrine is based on "equitable principles," the *Ball Corp.* court rejected the contention that if a reissue claim is broader in any respect, it necessarily should be deemed broader in all respects and the recapture rule should apply. *Id.* at 1438, 221 USPQ at 296. But the CAFC limited its decision to situations where the broader aspect of the claim "is not material to the alleged error supporting reissue." *Id.* The CAFC did not resolve whether the recapture rule would apply if the reissue claim were broader than the cancelled claim in a way that was material to the alleged error supporting reissue.

The case at bar potentially presents the issue left open in *Ball Corp.* Part of the "error" alleged in the reissue application herein is the decision during the prosecution of the original patent to restrict claim 1 so as to include limitations relating to the preferred coupling means. In an effort to address this alleged "error," Patecell removed this limiting language when drafting claim 29. Claim 29 is therefore broader than cancelled claim 1 in a way that is material to the alleged error supporting reissue.

■ Upon consideration of this issue left unresolved in *Ball Corp.*, this court concludes that the recapture rule should not bar a patentee from securing a reissue claim that is broader in a material respect than a cancelled claim when, as is potentially the case here, the reissue claim also is narrower than the cancelled claim in a way that is material to the "error."

■ As the CAFC recognized in *Ball Corp.*, the crucial issue in assessing the

significance of the cancellation (or narrowing) of a claim on the existence of "error" is the intent of the applicant when he or she cancelled the claim. *Id.* at 1436, 221 USPQ at 295. The recapture rule is based on the premise that when a patent applicant seeks to secure a patent by responding to a rejection of a claim by cancelling or narrowing the claim, the applicant's intent is ordinarily presumed—the claim was cancelled or narrowed based on a deliberate judgment that the claim as originally drafted was unpatentable. *See, e.g., id.* at 1435, 221 USPQ at 294; *In re Willingham,* 282 F.2d 353, 357, 48 CCPA 727, 733, 127 USPQ 211, 215 (1960), *quoted in In re Petrow,* 402 F.2d 485, 487, 56 CCPA 710, 712, 159 USPQ 449, 450 (1968). *See also Dobson,* 137 U.S. at 264–65, 11 S.Ct. at 72–73. Under the patent laws, if a claim is unpatentable over prior art, a claim that differs only by being broader in certain respects is likewise unpatentable. *See, e.g., Byers,* 230 F.2d at 456, 43 CCPA at 807–08, 109 USPQ at 56, where the court concluded, in effect, that it is "evident" that the prohibition of the recapture rule extends to a claim that "differs from [the cancelled claim] only in being broader." Thus, a deliberate judgment that a claim is unpatentable would constitute a deliberate judgment that a claim that differs only by being broader also is unpatentable.

But when the reissue claim is narrower than the cancelled claim in a material respect, a similar conclusion as to the patentee's intent and, hence, as to the absence of "error" cannot be made exclusively on a comparison of the reissue claim with the cancelled claim. Under the patent laws, the fact that a particular claim is unpatentable over prior art does not mean that a claim that is narrower in some respect necessarily also would be unpatentable. The addition of a particular limitation can result in an otherwise unpatentable claim becoming patentable. *See, e.g., Wahpeton Canvas Co. v. Frontier, Inc.,*

870 F.2d 1546, 1552 n. 10 (Fed.Cir.1989) ("a necessarily narrower dependent claim may be valid when the claim from which it depends is not").[1] Therefore, one cannot presume merely from the act of cancelling a claim that a patent applicant made a deliberate judgment that a second claim that is narrower in a certain respect than the cancelled claim also would be unpatentable.

That conclusion should not change when the second claim, while narrower in at least one respect, is also broader in some other respect. The applicant may have agreed with the patent examiner that the original claim was unpatentable but may not have considered, when cancelling the claim, that the claim could have been rendered patentable by the addition of a particular limitation. Hence, a deliberate decision to cancel a particular claim because it is unpatentable would not necessarily constitute a deliberate judgment that a claim that is broader in some ways and narrower in others also would be unpatentable.

Thus, when a reissue claim is narrower than the cancelled claim in a way that is material to the alleged "error" supporting reissue, it is not possible to conclude from a comparison of claim scope alone that no "error" was involved in the patentee's failure to include a claim of the general scope of the reissue claim in the original patent. Of course, to conclude that claim scope alone is not sufficient to indicate the absence of "error" is not to say that Section 251 "error" necessarily exists in this case. Defendant potentially could present other evidence in addition to claim scope to demonstrate the absence of "error" herein. But defendant's motion for partial summary judgment is based, in pertinent part, on the contention that the recapture rule applies because reissue claim 29 is broader than cancelled claim 1 in some respects and narrower in none. Because, as explained above, that contention is disputed, defendant's motion for partial summary judgment must be denied.[2]

---

**1.** Indeed, 35 U.S.C. § 282 provides that dependent claims, which are necessarily narrower than the independent claim upon which they depend, are presumed valid even when the independent claim upon which they depend is invalid.

**2.** Summary judgment is appropriate only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d

## IV.

Defendant contends that claim 29 also fails to meet the requirements of 35 U.S.C. § 251 in that it does not cover "the invention disclosed in the original patent" and introduces "new matter" not contained in the original patent. Both arguments turn on defendant's contention that Patecell, in effect, changed the nature of the invention in the reissue patent with respect to where slippage occurs when a tire deflates.

With respect to the identity of invention requirement of Section 251, defendant contends that the '273 patent disclosed slippage at *both* the interface between the insert and the rim *and* at the interface between the insert and the tire, and that claim 29 of the reissue patent covers a different invention by requiring slippage at the rim but leaving slippage at the tire optional. But as described in II, *supra,* contrary to defendant's argument, the broad description of the invention in the original specification indicates that slippage can occur at the tire *"and/or"* at the rim.

To support its argument, defendant relies primarily upon the following statement in the original specification:

> When the arcuate members ... of the device as shown in FIGS. 1–5 are fashioned from high-density polyethylene or polypropylene, the inherent lubricant qualities of such materials permit relative sliding movement between the inner peripheries ... and the drop-center ... *and* between the outer peripheries ... and the inner tire surface ... when lack of air within the tire permits the road pressure to flatten or deflect the tire tread....

(Emphasis added.) But this portion of the specification merely describes a specific embodiment of the invention involving slippage both at the tire and at the rim. Such an embodiment is consistent rather than inconsistent with the broad teaching else-

where in the specification that slippage can occur at the tire *"and/or"* at the rim.

Thus, since the original specification arguably leaves slippage at the tire optional by providing for slippage at the tire *"and/or"* at the rim, claim 29 arguably is fully supported by the original disclosure and directed at the same invention disclosed in the original patent.

Defendant's reliance on *U.S. Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corp.,* 315 U.S. 668, 62 S.Ct. 839, 86 L.Ed. 1105 (1942), and *Principle Business Enterprises, Inc. v. United States,* 7 Cl.Ct. 433, 226 USPQ 180 (1985), is similarly unavailing. In each of those cases, unlike the case at bar, the respective specification described the invention in a manner that the court viewed as inconsistent with the description in the reissue claim. *Industrial Chemicals,* 315 U.S. at 677, 62 S.Ct. at 844; *Principle Business,* 7 Cl.Ct. at 437, 226 USPQ at 182–83.

Defendant relies upon the statement in *Industrial Chemicals* that "[i]t must appear from the face of the instrument that what is covered by the reissue was intended to have been covered and secured by the original [patent]." 315 U.S. at 676. But that statement has not been interpreted to create a separate requirement that a reissue applicant demonstrate "an intent to claim" in the original patent the invention defined in the reissue claims. Rather, an intent to claim is "only one factor that sheds light upon whether the claims of the reissue application are directed to the same invention as the original patent and the reissue would correct an inadvertent error in the original patent." *In Re Hounsfield,* 699 F.2d 1320, 1323, 216 USPQ 1045, 1048 (Fed.Cir.1983). *See also In Re Weiler,* 790 F.2d 1576, 1582, 229 USPQ 673, 677 (Fed. Cir.1986). Herein, the original specification and claims arguably support a conclusion that reissue claim 29, in describing an insert that slips at the rim, and leaves

---

202 (1986). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed. 2d 265 (1986), and all significant doubt over factual issues is resolved in favor of the non-

moving party. *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir. 1987); *SRI International v. Matsushita Electric Corp.,* 775 F.2d 1107, 1116, 227 USPQ 577, 581 (Fed.Cir.1985).

slippage at the tire optional, is directed at the same invention disclosed in the original patent.

### V.

Defendant's allegation that claim 29 is invalid under the new matter prohibition of 35 U.S.C. § 251 is based on the same contention rejected in IV, *supra,* that the specification in the '273 patent required slippage at the tire and at the rim, while claim 29 left slippage at the tire optional.[3] As described above, the original specification arguably provides a description of the operation of the insert that supports the slippage description in claim 29.[4] Defendant's motion for partial summary judgment based on the alleged dependence of claim 29 on new matter therefore must be denied. *See, e.g., In Re East,* 495 F.2d 1361, 1366, 181 USPQ 716, 719–20 (CCPA 1974).

### Conclusion

For the foregoing reasons, defendant's motion for partial summary judgment is denied.

IT IS SO ORDERED.

---

3. The identity of defendant's arguments concerning the "new matter" and identity of invention requirements of Section 251 is to be expected. In *In Re Oda,* 443 F.2d 1200, 58 CCPA 1353, 170 USPQ 268 (1971), the court cited with general approval the following statement on reissue patents in Walker on Patents, first Deller's Edition (1937), § 311 New Matter:

The provision, first enacted in The Patent Act of 1870 ... that 'no new matter shall be introduced into the specification' is merely another way of saying that a reissued patent shall be for the same invention as the original.

*Id.* at 1204, 58 CCPA at 1358, 170 USPQ at 271.

4. Defendant also argues that the paragraph added to the original specification during reissue constitutes new matter because it provides that slippage occurs primarily at the rim with substantially no slippage at the tire. But even assuming that this paragraph constitutes new matter, claim 29 would not be rendered invalid. The addition of new matter to a specification, while objectionable, would not result in claim invalidity unless the claims encompass that new matter. *Pennwalt Corp. v. Akzona Inc.,* 740 F.2d 1573, 1578 n. 11, 222 USPQ 833, 836 (Fed.Cir. 1984) (citing *In re Rasmussen,* 650 F.2d 1212, 211 USPQ 323 (CCPA 1981)).